MICHAEL C. MARTINEZ (SBN 275581)
mmartinez@democracyforward.org
KARIANNE M. JONES*
kjones@democracyforward.org
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090

*_Pro hac vice_ application forthcoming

JI-IN LEE HOUCK (SBN 280088)
jiin@stalwartlaw.com
STALWART LAW GROUP
1100 Glendon Ave., Suite 1840
Los Angeles, California 90024
Telephone: (310) 954-2000

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| STUDENT DEBT CRISIS,<br><br>Plaintiff,<br>v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>KATHLEEN KRANINGER, in her official capacity as Director of the Consumer Financial Protection Bureau, | NO. 2:19-cv-10048<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DEPARTMENT
OF EDUCATION,

and

ELISABETH DEVOS, in her official
capacity as Secretary of Education,

Defendants.

Complaint for Declaratory and Injunctive Relief

Plaintiff Student Debt Crisis ("SDC") brings this action for declaratory and injunctive relief against Defendants Consumer Financial Protection Bureau ("CFPB"), *et al*. for violating the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  Plaintiff alleges on information and belief:

## INTRODUCTION

1.      This lawsuit centers on the CFPB's statutory and regulatory obligation to supervise the student loan servicing market, including the servicing of both private and federal student loans, and its decision to abandon the obligation as to federal student loans through a putative rule in a manner that violates the APA.

2.      At over $1.6 trillion, student loan debt is now the second-largest source of consumer debt, after housing debt.  The vast majority of student loan debt – over 81 percent – is held by the federal government, with loans held by private-sector creditors making up the much smaller remainder.

3.      This debt is managed by student loan servicers.[1]  Student loan servicers are private-sector financial services firms that service loans on behalf of creditors, including the federal government.  Loan servicers are responsible for, among other things, collecting payments on a loan, advising borrowers on resources and benefits to better manage their student loan obligations, responding to customer service inquiries, and performing other administrative tasks associated with maintaining a loan.

4.      Failure by loan servicers to comply with legal requirements can add significant costs to individual borrowers.  Supervision by an independent financial

---

[1] A servicer can manage both federal and private student loans.  To the extent this Complaint refers to a large federal student loan servicer it means a "larger participant in the student loan servicing market" engaged in the servicing of a portfolio of federal student loans owned by the federal government.

regulator is therefore a crucial component of a well-functioning student loan market as well as the financial health of the tens of millions of Americans with student debt.

5.     Under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), the CFPB was immediately vested with supervisory authority over private student lending by nonbank lenders.  But this is not the CFPB's only supervisory authority over student loans.

6.     The CFPB also has, under Dodd-Frank and CFPB regulations, supervisory authority over nonbank "larger participant[s] in the student loan servicing market," including those servicing federally held student loans.  *See* Defining Larger Participants of the Student Loan Servicing Market, 78 Fed. Reg. 73,383 (Dec. 6, 2013) (codified at 12 C.F.R. Pt. 1090.106) ("Student Loan Servicing Supervision Rule").

7.     The CFPB, however, purports to abandon this latter authority over the servicing of federally held student loans by large servicers by adopting a new rule *sub silentio*.  This putative new supervision rule ("New Supervision Rule") states that the CFPB only has supervisory authority over issues related to student loans owned by private creditors, including private student loans, but not over the 81 percent of loans that are held by the federal government.

8.     The New Supervision Rule improperly attempts to amend the Student Loan Servicing Supervision Rule, a regulation established by the CFPB through a public rulemaking process.

9.     The CFPB's unlawful New Supervision Rule comes amid thousands of student borrower complaints aimed at large federal student loan servicers like the Pennsylvania Higher Education Assistance Agency ("PHEAA"), which manages the county's public service loan forgiveness ("PSLF") program.  PHEAA's failures

Complaint for Declaratory and Injunctive Relief

2

as the PSLF servicer have undermined the goals of the PSLF program and created financial hardship for borrowers hoping to discharge their loans through years of public service.

10.     The New Supervision Rule also comes as the CFPB has appointed Robert Cameron, a former PHEAA executive, as its Student Loan Ombudsman in charge of overseeing student loans.

11.     The New Supervision Rule not only harms millions of student borrowers, but it violates the APA for lacking a public notice and comment process, being contrary to law, lacking a required statement of basis, and being arbitrary and capricious.  It also unlawfully withholds agency supervision of large student loan servicers in violation of the APA.

12.     In addition to the New Supervision Rule, Plaintiff also challenges the CFPB and Defendant United States Department of Education's failure to timely implement a memorandum of understanding ("MOU") required by Dodd-Frank to coordinate assistance to individual borrowers with private and federal student loans.  12 U.S.C. § 5535(c)(2).  This action is unlawfully withheld in violation of the APA.

13.     Accordingly, the Court should declare that the CFPB's New Supervision Rule violates the APA; set aside and vacate the New Supervision Rule and/or its underlying policy; declare that the CFPB's supervisory authority includes the supervision of "larger participant[s] of the student loan servicing market," including large servicers engaged in the servicing of federally held student loans, as defined in Dodd-Frank and the Student Loan Servicing Supervision Rule; order that the CFPB resume its supervision pursuant to Dodd-Frank and the Student Loan Servicing Supervision Rule; and require that the CFPB and the Department of Education issue the MOU required by Dodd-Frank by a date certain.

---

Complaint for Declaratory and Injunctive Relief

3

**PLAINTIFFS**

14.     Plaintiff SDC is a non-profit (501(c)(4)) organization with almost a million supporters who are student loan borrowers.  SDC's mission, described further below, is to assist student borrowers through advocacy and educational programs.

15.     SDC is located, and has its principal place of business, in Sherman Oaks, California, within the Western Division of the Central District of California.

**DEFENDANTS**

16.     Defendant CFPB is a federal agency headquartered in the District of Columbia.  Its principal office is located at 1700 G Street N.W., Washington, D.C. 20552.

17.     Defendant Kathleen Kraninger, in her official capacity as Director of the Consumer Financial Protection Bureau, is responsible for administering the nation's consumer financial laws, protecting consumers from unfair, deceptive, or abusive practices, and acting against companies that violate the law.  Director Kraninger maintains an office at the CFPB's headquarters, located at 1700 G Street N.W., Washington, D.C. 20552.

18.     Defendant United States Department of Education is a federal agency headquartered in the District of Columbia.  Its principal office is located at 400 Maryland Avenue S.W., Washington, D.C. 20202.

19.     Defendant Elisabeth DeVos, in her official capacity as Secretary of the Department of Education, is responsible for administering the federal student loan program, including PSLF.  Secretary DeVos maintains an office at the Department's headquarters, located at 400 Maryland Avenue S.W., Washington, D.C. 20202.

**JURISDICITON AND VENUE**

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under federal law.  The relief requested herein is authorized by the APA, 5 U.S.C. § 702, and the Court's authority to enjoin federal agencies and officers from violating federal law.

21.     Defendants' actions give rise to an actual case or controversy within the meaning of Article III of the U.S. Constitution.

22.     SDC has organizational standing to assert claims as set forth below:

a.  SDC's mission and purpose is to advocate for student loan and debt policies through legislative efforts and through the media.  SDC also directly assists student loan borrowers through direct communications, lectures, webinars, and special events.

b.  A survey SDC conducted in 2018[2] of its supporters shows that student borrowers face significant debt loads, which impact all aspects of their lives.  At the same time, these borrowers experience unprecedented frustration with their loans and loan servicers, reporting that loan servicers are adding to, not alleviating, their financial burdens.

c.  The challenged actions – the New Supervision Rule and the lack of an MOU required by Dodd-Frank, as discussed further below (together, "Challenged Actions") – allow and exacerbate student loan and servicer problems, including the failures of the PSLF program.  Prior to the Challenged Actions, SDC directed its supporters to CFPB resources for their student loan needs, encouraged the use of

---

[2] Summer & Student Debt Crisis, Buried in Debt:  A National Survey on the State of Student Loan Borrowers in 2018 (Nov. 1, 2018), https://www.meetsummer.org/share/Summer-Student-Debt-Crisis-Buried-in-Debt-Report-Nov-2018.pdf

the CFPB's consumer complaint tool, and provided loan servicer experience data to the CFPB upon request.  SDC directed its members to submit complaints to CFPB knowing that these complaints informed CFPB's oversight of "larger participants in the student loan servicing market," including those engaged in the servicing of federally held student loans.  Further, SDC directed its members to submit complaints to CFPB knowing that information about such complaints would be available to and shared with the Department of Education because of the then-existing MOUs.  The Department of Education is responsible for administering Federal Student Aid programs, including PSLF.  As a result of the Challenged Actions, the CFPB is no longer a viable resource for SDC's supporters seeking student loan assistance.

d.  The Challenged Actions directly conflict with SDC's organizational mission and have impaired SDC from providing the services it was formed to provide by causing SDC to redirect its resources from other projects to assist its supporters in seeking and obtaining student loan assistance and, in some cases, PSLF to which they are entitled.

e.  The Challenged Actions have forced SDC to redirect its educational efforts.  SDC has had to triple its student debt workshops to assist borrowers experiencing unprecedented challenges when dealing with their student loan servicers and to respond to increased consumer complaints that would have previously been addressed by CFPB.  SDC has also increased its direct communications relating to consumer education and awareness by more than double as a result of the Challenged Actions.

f.  The Challenged Actions have forced SDC to incur and redirect costs, including:  hiring two additional staff members to support increased consumer protection-related work, securing shared workspace to accommodate the growing

staff, responding to borrowers impacted by particular loan servicing issues, developing custom workshops to better address the growing need for direct services created by the CFPB's abandonment of its supervisory role, expanding its email platform at the cost of several hundred dollars per month to deal with increased communications, and conducting consumer research and compiling servicer experience data at additional costs.

g.   Because the Defendants have not divulged the New Supervision Rule or its underlying policy in its entirety, Defendants have made it impossible to quantify the exact increase in risk to SDC caused by the Rule, but available information leaves no doubt that the increase in risk to SDC is, objectively and as a whole, substantial and non-trivial.

h.   These injuries would be redressed by a favorable decision by this Court, which would invalidate the New Supervision Rule pending a public rulemaking process and order that the CFPB resume its supervision pursuant to Dodd-Frank and the Student Loan Servicing Supervision Rule.  This could ultimately lead Defendants to abandon or modify the Rule or the underlying policy through a public rulemaking process that includes input from affected student borrowers, which would diminish the threat to SDC's interests.  Also, an order requiring Defendants to issue an MOU would aid in the oversight of the student loan industry in the manner required by law.

23.    SDC has no adequate remedy at law because it cannot sue Defendants for money damages.

24.    Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1), because it is Plaintiff's residence and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

---

Complaint for Declaratory and Injunctive Relief

7

## THE ADMINISTRATIVE PROCEDURE ACT

25.     The APA allows a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" to seek judicial review of that action.  5 U.S.C. § 702.  Relevant here, under the APA, a reviewing court may "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A) or "without observance of procedure required by law," *id.* § 706(2)(D).

26.     This case is properly brought under the standards set forth in the APA.  *See* 5 U.S.C. § 701(a).

27.     Defendants' actions constitute final agency actions and no further exhaustion of remedies is required.

28.     In the alternative, exhaustion is not required because it would be futile.

## FACTUAL ALLEGATIONS

### A. The Department of Education Contracts with Servicers to Manage Federal Student Loans and the PSLF Program

29.     The Department of Education oversees federal education programs.  The Department's role includes guaranteeing equal access to educational opportunities and maintaining significant higher education loan and grant programs to open doors for all students desiring to continue their education beyond primary and secondary school.

30.     Today, the Department is one of the world's largest creditors.  But the Department of Education does not service federal loans directly.  Instead, it

generally purchases financial services, including loan servicing, from private-sector firms that specialize in the handling of student loan accounts.

31.     The Department of Education has contracts with nine student loan servicers to manage its approximately $1.3 trillion federal student loan portfolio.

32.     Of these servicers, at least PHEAA, Navient Corporation, Nelnet Servicing, and Great Lakes Higher Education Corporation qualify as "larger participant[s] in the student loan servicing market" under the Student Loan Servicing Supervision Rule by virtue of their servicing of loans held by the Department of Education, as discussed further below.[3]

33.     According to the Department of Education, student loan servicers "are responsible for collecting payments on a loan, advising borrowers on resources and benefits to better manage their federal student loan obligations, responding to customer service inquiries, and performing other administrative tasks associated with maintaining a loan on behalf of [the Department of Education]."[4]

34.     There are no consistent, market-wide federal standards for student loan servicing.  Servicers generally have discretion to determine policies related to

---

[3] Although each entity maintains a separate contract with the Department of Education, Nelnet Servicing and Great Lakes share a corporate parent, Nelnet Inc.  *See* U.S. Dep't of Educ., Fed. Student Aid, *Federal Student Loan Portfolio*, https://studentaid.ed.gov/sa/about/data-center/student/portfolio (last visited Nov. 12, 2019).  As of September 2018, PHEAA was the largest servicer by loan volume ($344 billion).  Navient Corporation was not far behind, at $223 billion.  AEI, *Testimony: Servicing Federal Student Loans* (Mar. 6, 2019), https://www.aei.org/research-products/testimony/testimony-servicing-federal-student-loans/ (last visited Nov. 12, 2019).

[4] U.S. Dep't of Educ., Fed. Student Aid, *Loan Servicing Contracts*, https://studentaid.ed.gov/sa/about/data-center/business-info/contracts/loan-servicing (last visited Oct. 10, 2019).

many aspects of their operations, provided that the policies comply with the service terms set in Department of Education contracts.[5]

35.     Loan servicers are also required to assist with forgiveness programs, including PSLF.  "All contracted federal student loan servicers are responsible for . . . communicating with borrowers about the general availability of the program and enrolling borrowers in selected repayment plans that may enable them to qualify for PSLF."[6]

36.     In 2007, Congress created the PSLF program, which encourages individuals to work in public service by offering federal student loan forgiveness to borrowers who complete a period of public service.  34 C.F.R. § 685.219.  PSLF enables graduates to take low-paying jobs in government and at nonprofits serving the elderly, low-income children, people with disabilities, victims of domestic violence, and other vulnerable groups. Many teachers, nurses, social workers, firefighters, and members of the armed forces are eligible for PSLF.

37.     Approximately one in four U.S. workers is employed in public service and "[b]y the end of 2016, more than 32 million borrowers were repaying loans that [were] potentially eligible for PSLF."[7]

---

[5] U.S. Dep't of the Treasury, A Financial System that Creates Economic Opportunities 11 (2018), https://home.treasury.gov/sites/default/files/2018-08/A-Financial-System-that-Creates-Economic-Opportunities---Nonbank-Financials-Fintech-and-Innovation.pdf (last visited Oct. 10, 2019) ("Federal student loan servicing currently lacks effective minimum servicing standards.").

[6] See, e.g., Alexandra Hegji, Cong. Research Serv., No. R45389, The Public Service Loan Forgiveness Program: Selected Issues 22, Oct. 29, 2018, https://fas.org/sgp/crs/misc/R45389.pdf.

[7] CFPB, *Staying On Track While Giving Back: The Cost Of Student Loan Servicing Breakdowns For People Serving Their Communities* 1, June 2017, (hereinafter "CFPB, *Staying on Track*"), https://files.consumerfinance.gov/f/documents/201706_cfpb_PSLF-midyear-report.pdf (last visited Nov. 12, 2019).

38.     PHEAA, operating under the name FedLoan Servicing ("FedLoan"), services federal loans held by the Department of Education originated under the Federal Direct Loan program and those Federal Family Education Loan Program ("FFEL") loans owned by the federal government.[8]

39.     Enacted in 2007, the College Cost Reduction and Access Act ("CCRAA"), Pub L. No. 110-84, 121 Stat 784 (2007), outlines the requirements for PSLF. Section 401 of the CCRAA mandates that "[t]he Secretary [of Education] shall cancel the balance of interest and principal due . . . on any eligible Federal Direct Loan not in default for a borrower who[:]"

a.  "has made 120 monthly payments on the eligible Federal Direct Loan after October 1, 2007, pursuant to [an income-driven repayment plan or the standard repayment plan (or a plan with a monthly payment at least equal to the standard plan)] . . . ;" *Id.* and

b.  "is employed in a public service job at the time of such forgiveness," *id.*; and

c.  "has been employed in a public service job during the period in which the borrower makes each of the 120 payments described in subparagraph (A)." *Id.*

40.     Since it requires 10 years of payments, the first claims eligible for PSLF ripened in late 2017.

41.     Via a 2009 contract with the Department of Education, FedLoan (a division of PHEAA) is the primary servicer for borrowers progressing towards PSLF.

---

[8] PHEAA, operating under the name American Education Services ("AES"), also services private (non-federally guaranteed) loans and federally-guaranteed loans originated under the (now-discontinued) FFEL program that are owned by private companies.

Complaint for Declaratory and Injunctive Relief

11

42.     Borrowers have no choice but to rely on FedLoan to administer PSLF fairly and correctly.  But FedLoan has failed student borrowers in its administration of PSLF.

43.     PHEAA, through FedLoan, is effectively guaranteed a steady flow of borrowers through the program for as long as its contract lasts.[9]

44.     PHEAA reaps substantial rewards from its contracts with the federal government.  In the fiscal year ending June 2019, its revenues from servicing student loans pursuant to its contract with the Department of Education were over $201 million, making up around a third of its overall operating revenues.

45.     PHEAA is the subject of thousands of consumer complaints.  From September 2017 to August 2019, the most recent period for which the CFPB made a formal report, the CFPB received about 3,100 complaints concerning PHEAA's servicing of federal student loans.

46.     According to the latest available data, as of June 2019, 90,962 unique borrowers had submitted 110,729 applications for PSLF, and only 1,216 applications had been approved for forgiveness.  Only 845 borrowers—fewer than 1% of unique borrowers submitting applications—have had their loans forgiven.  These numbers make clear that PSLF has been mismanaged, to the detriment of countless public servants across the nation.

47.     Recognizing the PSLF Program's failures, in January 2018, a bipartisan group of lawmakers authorized $700 million to be available on a first-come, first served basis as a temporary expansion of PSLF ("TEPSLF"), which is available to borrowers who hold Direct Loans but made some or all of their 120 payments on a nonqualifying repayment plan, and whose last 12 payments were greater or equal

---

[9] The contract is up for renewal in December 2019.

to what they would have paid on an income-driven repayment plan.  This expansion requires forgiveness if the statutory qualifications are met.

48.     The Department of Education, through FedLoan, then reviews application and determines whether to grant TEPSLF.

49.     There is no formalized process for a borrower to challenge or appeal the denial of PSLF or TEPSLF.

50.     As of the end of June 2019, only 726 requests out of 17,466 requests considered—4.15%—were approved for TEPSLF.[10]

51.     In a 2017 report, the CFPB found that borrowers have complained that "their servicer provides inaccurate counts of qualified payments" and that "their previous qualifying payments may not be reflected in the payment histories maintained by [FedLoan]."[11]

52.     The CFPB has also found that borrowers "struggle to get their servicer to correct [payment counting] error[s] or explain why payments were not qualified."[12] "This makes it difficult for borrowers to detect erroneous counts that could ultimately affect their eligibility for loan forgiveness."[13]

53.     The Department of Education knows of—but completely disregards—repeated misrepresentations made by large servicers engaged in the servicing of federally held student loans to borrowers who are attempting to qualify for PSLF

---

[10] U.S. Dep't of Educ., Fed. Student Aid, March 2019 PSLF Report (Mar. 31, 2019), https://studentaid.ed.gov/sa/about/data-center/student/loan-forgiveness/pslf-data (hereinafter "FSA, March 2019 PSLF Report") (last visited Oct. 10, 2019).
[11] See CFPB, *Staying on Track*, *supra*, at 39-40.
[12] *Id.* at 39.
[13] U.S. Gov't Accountability Office, GAO-18-547, Public Service Loan Forgiveness: Education Needs to Provide Better Information for the Loan Servicer and Borrowers 25 (2018),(hereinafter "GAO, Public Service Loan Forgiveness Report"), https://www.gao.gov/assets/700/694304.pdf (last visited Nov. 12, 2019).

Complaint for Declaratory and Injunctive Relief

or TEPSLF, resulting in unwarranted denials of loan forgiveness.  In the face of this abdication of responsibility, large servicers engaged in the servicing of federally held student loans continue to mislead student loan borrowers and the magnitude of the problem continues to worsen.

54.    An OIG report concluded that the Department of Education "rarely hold[s] servicers accountable for instances of noncompliance with Federal loan servicing requirements."[14]

55.    Numerous lawsuits have been filed against large servicers engaged in the servicing of federally held student loans, alleging widespread misconduct.[15]  Rather

---

[14] U.S. Dep't of Educ., Office of Inspector Gen., ED-OIG/A05Q0008, Federal Student Aid: Additional Actions Needed to Mitigate the Risk of Servicer Noncompliance with Requirements for Servicing Federally Held Student Loans (Mar. 5, 2019), https://www2.ed.gov/about/offices/list/oig/auditreports/fy2019/a05q0008.pdf (hereinafter "OIG, Federal Student Aid") (last visited Nov. 12, 2019).

[15] *See, e.g., People of the State of New York v. Pa. Higher Educ. Assistance Agency*, No. 1:19-cv-09155, 2019 WL 5095707 (S.D.N.Y. filed Oct. 3, 2019); *Hyland v. Navient Corp.*, No. 1:18-cv-09031, 2019 WL 2918238 (S.D.N.Y. filed Oct. 3, 2018); *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, No. 1:17-cv-00253-MW/GRJ, 2018 WL 5621872 (N.D. Fla. Sept. 20, 2018), *pending appeal*, No. 18-14490, 2018 WL 6990203 (11th Cir.); *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, No. 3:17-cv-00183-NJR-SCW, 2017 WL 6501919 (S.D. Ill. Dec. 19, 2017), *vacated and remanded by* 928 F.3d 639, (7th Cir. 2019); *Davis v. Navient Corp.*, No. 1:17-cv-00992, 2018 WL 1603871 (W.D.N.Y. filed Oct. 30, 2017); *Daniel v. Navient Solutions, LLC*, 8:17-cv-02503-SCB-JSS, 2018 WL 4997078 (M.D. Fla. filed Oct. 25, 2017); *Pennsylvania v. Navient Corp.*, 354 F.Supp.3d 529 (M.D. Pa. filed Oct. 5, 2017); *Travis v. Navient Corp.*, No. 2:17-cv-04885, 284 F.Supp.3d 335 (E.D.N.Y. filed Aug. 18, 2017); *Demyanenko-Todd v. Navient Corp.*, No. 3:17-cv-00772 (M.D. Pa. filed May 1, 2017); *Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-cv-00101 (M.D. Pa. filed Jan. 18, 2017); *California v. Navient Corp.*, No. CGC-18-567732, 2018 WL 3199474 (Cal. Super. Ct. filed June 29, 2018); *Illinois v. Navient Corp.*, No. 17 CH 00761 (Ill. Cir. Ct., Cook Cnty. filed Jan. 18, 2017); *Massachusetts v. Pa. Higher Educ. Assistance Agency*, No. 1784-cv-02682-BLS2 (Mass. Sup. Ct. filed Aug. 23, 2017); *Mississippi v. Navient Corp.*, No. 1:18-cv-00982 (Miss.

---

than addressing the servicer misconduct detailed in those lawsuits, the Department of Education has tried to prevent these suits from going forward arguing, largely unsuccessfully, that state oversight laws and regulations aimed at student loan servicers are preempted.

56.    The Department of Education has failed to supervise these large servicers of federal student loans and has turned a blind eye to borrower complaints.  But the CFPB, as an independent regulatory agency, has its own mandate to supervise these servicers to protect student borrowers.

**B. The CFPB Has Supervisory Authority Over "Larger Participant[s] in the Student Loan Servicing Market" Including Large Servicers Engaged in the Servicing of Federally Held Student Loans**

57.    In Dodd-Frank, Congress enacted a series of reforms designed to prevent a recurrence of the 2008 financial crisis and to protect consumers from harmful and predatory practices by financial institutions.

58.    Dodd-Frank established the CFPB with the purpose of "ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive."  12 U.S.C. § 5511(a).  Dodd-Frank gave the CFPB broad regulatory authority with which to accomplish this mission and established several mandatory duties consistent with its mission.

59.    Among these, the CFPB was immediately vested with supervisory authority over private student lending by non-bank entities.

---

Chan. 1st Dist. Ct. filed July 17, 2018); *Washington v. Navient Corp.*, No. 17-2-01115-1 (Wash. Sup. Ct. filed Jan. 18, 2017).

---

Complaint for Declaratory and Injunctive Relief

15

60.     The CFPB conducts reviews of student loan servicers pursuant to its statutory function to "collect[], research[], monitor[], and publish[] information relevant to the functioning of markets for consumer financial products and services to identify risks to consumers and the proper functioning of such markets."  12 U.S.C. § 5511(c)(3); *see also* Request for Information Regarding Student Loan Servicing, 80 Fed. Reg. 29,302 (May 21, 2015) (relying on authority granted by 12 U.S.C. § 5511(c)).

61.     The CFPB also has supervisory authority over larger participants in the student loan servicing market, including large servicers of federally held student loans.  Dodd-Frank grants the CFPB authority over "a larger participant of a market" for certain "consumer financial products or services."  12 U.S.C. § 5514(a)(1)(B), (b) (establishing supervisory authority).  Through a public regulatory process, the CFPB issued the Student Loan Servicing Supervision Rule.[16]  This rule defined the CFPB's authority to supervise larger participants in the "student loan servicing market."  12 C.F.R. § 1090.106.  This includes supervisory authority over large student loan servicers (those with over 1 million accounts).

62.     This rule specifically covered loans "made, insured or guaranteed under Title IV of the Higher Education Act of 1965 (20 U.S.C. § 1070 et seq.) or that

---

[16] *See* Defining Larger Participants of the Student Loan Servicing Market, 78 Fed. Reg. at 73386 ("Because student loan servicing is an important activity that affects millions of consumers, supervision of larger participants of this market will be beneficial to both consumers and the market as a whole.  Supervision of larger participants of the student loan servicing market will help the Bureau ensure that these market participants are complying with applicable Federal consumer financial law and will help the Bureau detect and assess risks to consumers and to the market.  The supervision program thereby will further the Bureau's mission to ensure consumers' access to fair, transparent, and competitive markets for consumer financial products and services.").

---

[are] extended to a consumer with the expectation that the funds extended will be used in whole or in part to pay post-secondary education expenses." *Id.* § 1090.106(a). Because federal student loans are made pursuant to Title IV, servicers of federal student loans are included within this category. *See also* 78 Fed. Reg. at 73385 ("The student loan servicing market is composed of entities that service Federal and private student loans that have been disbursed to pay for post-secondary education expenses.").

63.     In short, Dodd-Frank and the Student Loan Servicing Supervision Rule authorize the CFPB to supervise large servicers engaged in the servicing of federally held student loans, like PHEAA, Navient, Nelnet, and Great Lakes.

**C. Dodd-Frank Requires that the CFPB Appoint a Student Loan Ombudsman and Enter into a Memorandum of Understanding with the Department of Education**

64.     To aid in its student loan oversight function, the CFPB must appoint a student loan ombudsman who shall, "not later than 90 days after the designated transfer date,[17] establish a memorandum of understanding with the [Department of Education] student loan ombudsman . . . , to ensure coordination in providing assistance to and serving borrowers seeking to resolve complaints related to their private education or Federal student loans." 12 U.S.C. § 5535(c)(2).

65.     In keeping with this requirement, the Bureau and the Department previously entered into two MOUs:

---

[17] July 21, 2011 was designated as the transfer date. *See* Designated Transfer Date, 75 Fed. Reg. 57,252 (Sept. 20, 2010).

Complaint for Declaratory and Injunctive Relief

17

a.  A 2011 information-sharing MOU—the "Memorandum of Understanding Between the Bureau of Consumer Financial Protection and the U.S. Department of Education Concerning the Sharing of Information"; and

b.  A 2014 supervisory MOU—the "Memorandum of Understanding Concerning Supervisory and Oversight Cooperation and Related Information Sharing Between the U.S. Department of Education and the Consumer Financial Protection Bureau."

66.     The 2011 MOU set an information sharing process between the CFPB and the Department of Education, provided that complaints concerning private education loans would be directed to the CFPB and those concerning federal loans would be directed to the Department, and authorized the CFPB to request and receive information from the Department relevant to the resolution of complaints.

67.     The 2014 MOU expanded upon the agencies' partnership and specified procedures for the exchange of nonpublic information.  This coordination had some success[18] before the MOUs were terminated. For example, in a 2017 report to Congress, the CFPB student loan ombudsman documents how consumer complaints "spurred actions that brought more than $750 million in relief for student loan borrowers."[19]

---

[18] CFPB, *CFPB Secures $480 Million in Debt Relief for Current and Former Corinthian Students* (Feb. 3, 2015), https://www.consumerfinance.gov/about-us/newsroom/cfpb-secures-480-million-in-debt-relief-for-current-and-former-corinthian-students/ (last visited Nov. 12, 2019); Americans for Financial Reform, *AFR Statement: DeVos Decision to Stop Working with the CFPB is a Betrayal of Students and a Boon to Bad Actors* (Sept. 5, 2017), http://ourfinancialsecurity.org/2017/09/afr-statement-devos-decision-stop-working-cfpb-betrayal-students-boon-bad-actors/ (last visited Nov. 12, 2019).

[19] CFPB, *CFPB Report Finds Consumer Complaints Spurred Actions That Brought More Than $750 Million in Relief for Student Loan Borrowers* (Oct. 16, 2017),

---

68.     The CFPB's supervisory function is unique in that it "focuses on risks to consumers rather than risks to institutions."[20]  Accordingly, consumer complaints are integral to the CFPB's supervisory work, and the sharing of complaint data pursuant to the MOU between the CFPB and the Department of Education is integral to supervision of the student loan market.

69.     As relevant here, the CFPB explicitly directs examiners engaged in Supervision to "review borrower inquiries and complaints and call specific complaining borrowers to interview them regarding their experiences. Examiners should listen to live calls and taped calls to assess the quality and training of the servicer's call center personnel…determine the root cause of borrower inquiries and complaints, whether they were resolved adequately (including appropriate remediation for all borrowers affected by the root cause), and whether they were resolved in a timely manner."[21]

70.     Specifically with regard to PSLF, the CFPB directs examiners to then "[d]etermine whether the servicer has procedures, and whether the servicer follows its procedures, for circumstances where the borrower informs the servicer that a borrower is working in public service, including whether phone representatives assess the borrower's current circumstances and disclose the availability of any cancellation or loan forgiveness options reasonably believed to be the most appropriate to the borrower (e.g., PSLF, . . .)" and further "whether the servicer

---

https://www.consumerfinance.gov/about-us/newsroom/cfpb-report-finds-consumer-complaints-spurred-actions-brought-more-750-million-relief-student-loan-borrowers/
[20] CFPB, CFPB Supervision and Examination Process 11, (Mar. 2017), https://files.consumerfinance.gov/f/documents/201703_cfpb_Supervision-Examination-Overview.pdf.
[21] CFPB, Education Loan Examination Procedures 37, https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201706_cfpb_Education-Loan-Servicing-Exam-Manual.pdf (last visited Nov. 12, 2019).

Complaint for Declaratory and Injunctive Relief

19

processes requests for borrower benefits, including benefits or protections . . . (e.g., PSLF), in a timely and accurate manner." [22]

**D. The CFPB's Implementation of the New Supervision Rule and the Lack of a Required MOU Violate the Law**

71.     Since Trump Administration officials assumed control of the CFPB in 2017, the CFPB has changed its policy on its supervisory authority over the servicing of federally held student loans by large servicers.  The Department of Education has also taken actions that limit this supervision by the CFPB.

72.     In September 2018, then-Acting CFPB Director Mick Mulvaney announced the New Supervision Rule and stated publicly[23] that Dodd-Frank limited the CFPB's supervisory authority to private student loans and that the CFPB would not be responsible for issues related to servicing federal student loans.  Mulvaney said: "[Dodd-Frank] gives [the CFPB] responsibility for private student loans, OK, that represents about 8% of the market.  Under a handshake agreement within the Obama Administration, the Bureau was going after and regulating public student loans, which is most of them, 92% of them.  We said no no no, the statute says we're going to be responsible for private student loans, that's what we're going to do." *See* n.23.

---

[22]CFPB, *Education Loan Examination Procedures:*, https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201706_cfpb_Education-Loan-Servicing-Exam-Manual.pdf (last visited Nov. 12, 2019).
[23] CNBC, *Watch CNBC's Full Interview with OMB's Mick Mulvaney* (Sept. 12, 2018) https://www.cnbc.com/video/2018/09/12/watch-cnbcs-full-interview-with-ombs-mick-mulvaney.html (last visited Nov. 12, 2019).

73.     This is directly contrary to Dodd-Frank, which grants supervisory authority over private lending activity by non-bank entities, and the Student Loan Servicing Supervision Rule, by which CFPB defined its supervisory authority, consistent with Dodd-Frank, to include the servicers for federal student loans.

74.     In March 2019, Director Kraninger testified before the Senate Committee on Banking, Housing, and Urban Affairs that the fact that "99% of [PSLF] applicants are being denied" is "a question for the Department of Education."[24]  This confirms that the New Supervision Rule cedes CFPB supervision over large federal student loan servicers, including the servicing of the PSLF program.

75.     In the backdrop of the New Supervision Rule exists the tension between the Department of Education, under Secretary DeVos, and the CFPB as an independent regulatory agency.  The Department of Education objects to CFPB supervision over the servicing of federally held student loans by large servicers, arguing that these servicers are contractors of the Department and under the Department's purview.  For instance, the Department of Education has blocked the CFPB's efforts to address problems with the PSLF program, arguing that "[t]he Department of Education is charged with overseeing the Federal Student Aid portfolio [including PSLF], the CFPB is charged with oversight of the private

---

[24] *The Consumer Financial Protection Bureau's Semi-Annual Report to Congress Before the U.S. Senate Comm. on Banking, Housing, and Urban Affairs,* 116th Cong.  (2019), https://www.banking.senate.gov/hearings/03/01/2019/the-consumer-financial-protection-bureaus-semi-annual-report-to-congress (last visited Nov. 12, 2019); *Senator Menendez Presses Kraninger on PSLF*, YouTube (Mar. 13, 2019), https://www.youtube.com/watch?v=uxyDoOvlGt8 (last visited Nov. 12, 2019).

Complaint for Declaratory and Injunctive Relief

21

student loan industry."[25]   The CFPB's New Supervision Rule attempts to formalize this legally incorrect view.

76.      Notwithstanding Dodd-Frank's requirement that the CFPB and Department of Education establish an MOU to enable the agencies to coordinate their efforts to protect student borrowers, in August 2017 the Department of Education unilaterally rescinded the existing MOUs.[26]  The Department of Education's pretext was that the CFPB had failed to direct appropriate complaints (i.e., those related to the servicing of federally held student loans) to the Department, causing purported confusion among borrowers and servicers.[27]  The Department of Education criticized the CFPB for "using the Department's data to expand its jurisdiction into areas that Congress never envisioned.  This latest expansion is characteristic of an overreaching and unaccountable agency . . . . The Department takes exception to the CFPB unilaterally expanding its oversight role to include the Department's contracted federal loan servicers.  *The Department has full oversight responsibility for federal student loans*." (Emphasis added). *See* n.26 at 1-2.

77.      The required MOU is still not reinstated as of the filing of this complaint.

---

[25] Chris Arnold, *Exclusive: Turf War Blocked CFPB from Helping Fix Student Loan Forgiveness Program*, NPR (Oct. 15, 2019), https://www.npr.org/2019/10/15/769326896/exclusive-turf-war-blocked-cfpb-from-helping-fix-student-loan-forgiveness-progra (last visited Nov. 12, 2019).

[26] Letter from Kathleen Smith, Acting Assistant Sec'y, Off. of Postsecondary Educ., U.S. Dep't of Educ., and Dr. A. Wayne Johnson, Chief Operating Officer, Fed. Student Aid, U.S. Dep't of Educ., to Richard Cordray, Dir., CFPB (Aug. 31, 2017), https://perma.cc/BD46-DPL7 (last visited Nov. 12, 2019).

[27] The CFPB, then led by Director Richard Cordray, vigorously disputed this characterization. *See* Letter from Richard Cordray, Dir., CFPB to the Hon. Betsy DeVos, Sec'y, U.S. Dep't of Educ. (Sept. 7, 2017), https://www.consumerfinancemonitor.com/wp-content/uploads/sites/14/2017/09/Cordray-DeVos-Letter.pdf (last visited Nov. 12, 2019).

78.     Director Kraninger has publicly recognized that Dodd-Frank requires an information-sharing MOU, but laid blame for the lack of an MOU on the fact that the student loan ombudsman position at the CFPB was vacant at the time. [28]  This excuse is no longer available.

79.     After the CFPB's Student Loan Ombudsman, Seth Frotman, resigned in protest from the Ombudsman position in August 2018, [29] the position remained vacant until Robert Cameron was appointed in August 2019.

80.     Cameron was, until his appointment, an executive at the PHEAA, which services federal student loans, including for borrowers pursuing PSLF, through FedLoan.  Aside from its prominence in the industry, it is also one of the industry's worst actors and is the target of thousands of borrower complaints, as well as lawsuits, as described above.[30]

---

[28] *03/07/2019 - Putting Consumers First? A Semi-Annual Review of the CFPB: Hearing Before the H. Comm. on Financial Servs*., YouTube (Mar. 7, 2019), https://www.youtube.com/watch?v=5pb63zsNpWo&feature=youtu.be&t=13598 (last visited Nov. 12, 2019);  CFPB Semi-Annual Report, *supra* n.24. In a response to questioning by Rep. Jesus Garcia before the House Committee on Financial Services, Director Kraninger similarly acknowledged that the 2011 MOU "had a good purpose and function and I would note that obviously Congress required us to have that MOU in place, so it is a priority to have the conversation." *Putting Consumers First?*, *supra*.
[29] Cory Turner, *Student Loan Watchdog Quits, Says Trump Administration 'Turned its Back' on Borrowers*, NPR (Aug. 27, 2018), https://www.npr.org/2018/08/27/642199524/student-loan-watchdog-quits-blames-trump-administration (last visited Nov. 12, 2019).
[30] Casey Bond, *PHEAA is Being Sued for Seriously Mishandling Student Loan Payments*, Student Loan Hero (Aug. 23, 2017), https://studentloanhero.com/news/pheaa-mismanaged-debt-forgiveness-program/ (last visited Nov. 12, 2019).

81.    With Cameron's appointment, the CFPB has continued to tout its New Supervision Rule and its concomitant hands-off approach to large federal student loan servicers.[31]

82.    As a result of the New Supervision Rule, CFPB supervision of the servicing of federally held student loans by large servicers has ceased or has been improperly and unlawfully curtailed.  Data from the CFPB and Department of Education shows that the CFPB has not included reference to student loan servicers in its supervisory highlights since Summer 2017 when it updated its education loan examination procedures.[32]  According to data from the Department of Education, in Fiscal Year 2019, the CFPB ceded its supervision of the servicing of federally held student loans by large servicers to the Department of Education.[33]  In order to gather information needed to oversee the market, the CFPB is now requesting that information from the Department to no avail, as the Department has confirmed to Congress that it has withheld the requested information from the CFPB.  The

---

[31] Danielle Douglas-Gabriel, *Consumer Watchdog Signals Hands-Off Approach on Federal Student Loans*, Wash. Post (Aug. 16, 2019), https://washingtonpost.com/education/2019/08/17/consumer-watchdog-signals-hands-off-approach-federal-student-loans/ (last visited Nov. 12, 2019).

[32] *Cf.* CFPB, Supervisory Highlights Issue 16 (Summer 2017), https://files.consumerfinance.gov/f/documents/201709_cfpb_Supervisory-Highlights_Issue-16.pdf *with* Supervisory Highlights Issue 17 (Summer 2018), https://files.consumerfinance.gov/f/documents/bcfp_supervisory-highlights_issue-17_2018-09.pdf, Supervisory Highlights Issue 18 (Winter 2019), https://files.consumerfinance.gov/f/documents/cfpb_supervisory-highlights_issue-18_032019.pdf, Supervisory Highlights Issue 19 (Summer 2019), https://files.consumerfinance.gov/f/documents/cfpb_supervisory-highlights_issue-19_092019.pdf.

[33] Letter from Diane Auer Jones, Principal Deputy Under Sec'y, U.S. Dep't of Educ. to the Hon. Patty Murray (June 24, 2019), https://www.help.senate.gov/imo/media/doc/Enforcement%20Disclosure%2006-24-19%20.pdf (last visited Nov. 12, 2019).

Department of Education, as described above, has repeatedly taken the position that the CFPB should not have this information and has itself failed to take any meaningful action to curb the many problems attributable to large federal student loan servicers.

83.     The CFPB's New Supervision Rule and the CFPB and Department of Education's failure to establish an MOU as required by Dodd-Frank, violates the APA.

## CLAIMS FOR RELIEF

### Count One
### As to the CFPB and Director Kraninger
### (Procedurally Inadequate Rulemaking, 5 U.S.C. §§ 553, 706)

84.     Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

85.     Under the APA, an agency must provide the public with notice of a proposed rule, 5 U.S.C. § 553(b), and give "interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." *Id.* § 553(c).

86.     Agencies cannot evade the APA's requirements merely by declining to publish a rule for comment.

87.     Agencies must use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance.

88.     The Student Loan Servicing Supervision Rule has the force and effect of subjecting the student loan market, including servicers of federal student loans, to the supervisory jurisdiction of the Bureau and therefore affects the rights and

1   obligations of servicers with respect to the CFPB.  A change to the Rule without

2   additional process violates the notice and comment requirement of the APA.

3   89.     Defendants' purported New Supervision Rule is a consummated

4   decisionmaking on its policy governing its supervision of the servicing of federally

5   held student loans by large servicers and is therefore final agency action.

6   90.     The New Supervision Rule is a material deviation from the Student Loan

7   Servicing Supervision Rule, which was previously promulgated in a regulation by

8   notice and comment and thus requires the same process to amend.

9   91.     The New Supervision Rule is a "rule" under the APA but was promulgated

10  without notice and comment or other procedures required by the APA.

11  92.     Defendants have relied on this decisionmaking to limit its supervision of the

12  servicing of federally held student loans by large servicers, including PHEAA, the

13  corporation in charge of managing the PSLF program.

14  93.     The New Supervision Rule violates the APA because it was promulgated

15  "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), and

16  therefore must be set aside and vacated.

**Count Two**
**As to the CFPB and Director Kraninger**
**(Attempted Rulemaking that is Contrary to Law, 5 U.S.C. § 706(2)(A))**

20  94.     Plaintiff repeats and incorporates by reference each of the forgoing

21  allegations as if fully set forth herein.

22  95.     Under the APA, a reviewing court may set aside and vacate agency action

23  not in accordance with law.  5 U.S.C. § 706(2)(A).

24  96.     Substantive agency regulations have the force and effect of law and agency

25  actions inconsistent with regulations may be vacated as not in accordance with law.

26  5 U.S.C. § 706(2)(A).

Complaint for Declaratory and Injunctive Relief

97.     The CFPB by statute and regulation has supervisory authority over large federal student loan servicers.  The CFPB has promulgated a regulation, the Student Loan Servicing Supervision Rule, that expressly grants it supervisory authority over "larger participant[s] of the student loan servicing market," including supervision of the servicing of federally held student loans by large servicers.  12 C.F.R. § 1090.106.

98.     Because the New Supervision Rule unlawfully curtails the CFPB's supervisory authority over the servicing of federally held student loans by large servicers, it is contrary to Dodd-Frank and the CFPB's regulations, including the Student Loan Servicing Supervision Rule.

99.     The New Supervision Rule must be set aside and vacated under the APA as not in accordance with law.

## Count Three
### As to the CFPB and Director Kraninger
### (Procedurally Inadequate Rulemaking, 5 U.S.C. §§ 553, 706)

100.    Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

101.    The APA requires a statement of basis and purposes for final agency action. 5 U.S.C. § 553(c).

102.    The CFPB has not identified the major policy issues raised in the rulemaking pertaining to the New Supervision Rule, nor has it coherently explained why the agency resolved the issues as it did.

103.    In fact, the New Supervision Rule lacks any explanation of its basis and purpose, so it is subject to vacatur.

104.    The New Supervision Rule must be set aside and vacated for failing to include a statement of basis and purpose.

**Count Four**
**As to the CFPB and Director Kraninger**
**(Arbitrary and Capricious Rulemaking, 5 U.S.C. § 706(2)(A))**

105.   Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

106.   The APA empowers this Court to set aside agency action that is arbitrary, capricious, or contrary to law.  5 U.S.C. § 706(2)(A).  It is arbitrary and capricious when an agency fails to provide a reasoned explanation for its actions.

107.   If an agency changes its prior position, it must display awareness that it is changing position.  An agency may not disregard applicable rules or depart from a prior policy *sub silentio*.  A reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior rules or policies.

108.   The CFPB has given no reasoned explanation for the New Supervision Rule or its underlying policy.

109.   The New Supervision Rule and its underlying policy must be set aside and vacated as arbitrary and capricious.

**Count Five**
**As to the CFPB and Director Kraninger**
**(Failure to Act as Required by Law, 5 U.S.C. § 706(1))**

110.   Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

111.   The APA allows a court to "compel action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

112.   Congress through Dodd-Frank, and the CFPB through the Student Loan Servicing Supervision Rule, have imposed a non-discretionary duty on CFPB to

exercise supervisory authority over the servicing of federally held student loans by large servicers.

113.   The CFPB has ceased or improperly curtailed this supervision.  This is agency action "unlawfully withheld" and "unreasonably delayed" in violation of the APA.

**Count Six**
**As to all Defendants**
**(Failure to Act as Required by Law, 5 U.S.C. § 706(1))**

114.   Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

115.   The APA allows a court to "compel action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

116.   Congress provided the agencies with a clear 90-day deadline after July 21, 2011 to establish an MOU.

117.   The deadline for an MOU expired eight years ago.

118.   The Department's rescission of the 2011 and 2014 MOUs, and the failure to enter into a replacement MOU, violates a Congressional command.

119.   The CFPB and Department of Education are in violation of Dodd-Frank by not having an MOU in place.  This action is "unlawfully withheld" and "unreasonably delayed" agency action in violation of the APA.

**Prayer for Relief**

WHEREFORE, Plaintiff prays that this Court:

1.   Declare that the CFPB's New Supervision Rule violates the APA.

2.   Order that the New Supervision Rule is set aside and vacated.

3.   Declare that the CFPB has supervisory authority over nonbank "larger participant[s] of the student loan servicing market," including those

servicing federally held student loans, pursuant to Dodd-Frank and the Student Loan Servicing Supervision Rule.

4. Order that the CFPB resume supervising nonbank "larger participant[s] of the student loan servicing market," including those servicing federally held student loans, pursuant to Dodd-Frank and the Student Loan Servicing Supervision Rule.

5. Order that the CFPB and the Department of Education issue the MOU as required by Dodd-Frank within 30 days of the Court's order.

6. Order further relief as the nature of the case may require or as may be determined proper by this Court.

Respectfully submitted this 25th day of November, 2019.

*s/ Michael C. Martinez*

MICHAEL C. MARTINEZ (SBN 275581)
mmartinez@democracyforward.org
KARIANNE M. JONES*
kjones@democracyforward.org
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090

**Pro hac vice* application forthcoming

Complaint for Declaratory and Injunctive Relief

30

JI-IN LEE HOUCK (SBN 280088)
jiin@stalwartlaw.com
STALWART LAW GROUP
1100 Glendon Ave., Suite 1840
Los Angeles, California 90024
Telephone: (310) 954-2000

Counsel for Plaintiff