MARY McLEOD
General Counsel
JOHN R. COLEMAN
Deputy General Counsel
LAURA M. HUSSAIN
Assistant General Counsel
BERNARD J. BARRETT, JR. (CA Bar No. 165869)
Consumer Financial Protection Bureau
1700 G Street, N.W.
Washington, D.C. 20552
Telephone: (202) 435-9396
Facsimile: (202) 435-7024
Email:  Bernard.barrett@cfpb.gov

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDENT DEBT CRISIS, | Case No. 2:19-cv-10048-JAK |
| Plaintiff, | DEFENDANTS' NOTICE OF MOTION AND MOTION FOR DISMISSAL; MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.,* | Date:    June 29, 2020<br>Time:    8:30 a.m.<br>Dept:    Courtroom 10B<br>Judge:   Hon. John A. Kronstadt |
| Defendants. | |

## NOTICE OF MOTION AND MOTION FOR DISMISSAL

PLEASE TAKE NOTICE that on June 29, 2020, at 8:30 a.m., Defendants Consumer Financial Protection Bureau and Kathleen L. Kraninger, the remaining Defendants in this action, will bring on for hearing the within Motion for Dismissal before the Honorable John A. Kronstadt, United States District Judge, in Courtroom 10B of the First Street United States Courthouse for the Central District of California, Western Division, 350 West 1st Street, Los Angeles, California.[1] Defendants, by and through undersigned counsel, hereby move the Court to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

As set forth in the accompanying Memorandum of Points and Authorities, there is good cause for the relief requested. This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Bernard J. Barrett, Jr., and the exhibits attached thereto; all the pleadings and papers filed in this action; and such other and further arguments, documents and grounds as may be advanced in the future, including at the time of the hearing of this Motion.

---

[1] Counsel previously stipulated to a proposed briefing schedule for any motion to dismiss and the Court entered an Order adopting that briefing schedule on March 31, 2020. ECF No. 30. As directed by the Court in that Order, Defendants have set this matter for hearing on June 29, 2020.

i

*Defendants' Motion for Dismissal*                                  Case No. 2:19-cv-10048-JAK

1    This Motion is made following the conference of counsel pursuant to L.R. 7-

2 3 which took place on April 28, 2020.

3

4    DATED: May 6, 2020                    Respectfully submitted,

5

6                                          */s/* Bernard J. Barrett Jr.
                                           Bernard J. Barrett, Jr. (CA Bar No. 165869)
7                                          Consumer Financial Protection Bureau
                                           1700 G Street, N.W.
8                                          Washington, D.C. 20552
                                           Telephone: (202) 435-9396
9                                          Facsimile: (202) 435-7024
                                           Bernard.barrett@cfpb.gov

10                                         *Counsel for Defendants*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                           ii

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

BACKGROUND ............................................................................................3

  I.    Statutory and Regulatory Background ...................................................3

      A. The Consumer Financial Protection Bureau .......................................3

      B. Loans for Post-Secondary Education ...................................................5

      C. CFPB Supervision of Student Loan Servicers ....................................5

  II.  Recent Developments....................................................................6

  III.  This Lawsuit ...........................................................................7

LEGAL STANDARD ....................................................................................8

ARGUMENT.................................................................................................9

  I.    Counts I-IV Should be Dismissed Because They Do Not Challenge Final Agency Action and Fail to Plausibly State A Claim ..................................9

  II.  Plaintiff Lacks Standing ..................................................................12

      A.  Plaintiff Does Not Plausibly Plead A Cognizable Injury in Fact ........13

      B.  Plaintiff Does Not Plausibly Plead Causation or Redressability ........18

  III.  Count V Should Be Dismissed ...............................................................20

      A.  SDC's Challenge to CFPB's Exercise of Its Supervisory Authority (Count V) is Non-Justiciable ...........................................................20

      B.  The FAC Fails to Plausibly State A Claim as To Count V ...............23

CONCLUSION ..............................................................................................25

iii

# TABLE OF AUTHORITIES

**Federal Cases**

*Am. Diabetes Ass'n v. U.S. Dep't of the Army,*
  938 F.3d 1147 (9th Cir. 2019)..................................................9, 14, 16

*Animal Legal Def. Fund v. U.S. Dep't of Agric.,*
  632 Fed. Appx. 905 (9th Cir. 2015) ....................................... 16

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................... 12

*Augustine v. United States,*
  704 F.2d 1074 (9th Cir. 1983)................................................. 8

*Baker v. Rodriguez,*
  2011 WL 4529644 (C.D. Cal. Sept. 29, 2011) ...................... 12

*Balisteri v. Pacifica Police Dep't,*
  901 F.2d 696 (9th Cir. 1990)................................................... 9

*Bannister v. U.S. Parole Comm'n,*
  2020 WL 85229 (D.D.C. Jan. 7, 2020) ................................. 25

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................ 9

*Bennett v. Spear,*
  520 U.S. 154 (1997) .......................................................... 2, 10

*Citizens State Bank of Marshfield, Mo. v. FDIC,*
  751 F.2d 209 (8th Cir. 1984).................................................. 21

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ..........................................................18, 19

*Clegg v. Cult Awareness Network,*

iv

*Defendants' Motion for Dismissal*           Case No. 2:19-cv-10048-JAK

18 F.3d 752 (9th Cir. 1994) ................................................................. 9

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
   657 F.3d 936 (9th Cir. 2011)........................................................... 14

*Del Junco v. Conover*,
   682 F.2d 1338 (9th Cir. 1982)........................................................ 21

*East Bay Sanctuary Covenant v. Trump*,
   932 F.3d 742 (9th Cir. 2018)....................................................16, 17

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*,
   959 F.2d 742 (9th Cir. 1991)......................................................... 14

*First Nat'l Bank of Eden, S.D. v. Dept. of Treasury*,
   568 F.2d 610 (8th Cir. 1978)......................................................... 21

*Friends of the Earth v. Sanderson Farms, Inc.*,
   2019 WL 3457787 (N.D. Cal. July 31, 2019) ................................ 18

*Golden Pac. Bancorp v. Clarke*,
   837 F.2d 509  (DC Cir. 1988) ....................................................... 21

*Guardian Federal Savings and Loan v. FSLIC*,
   589 F.2d 658,  (D.C. Cir. 1978) .................................................... 21

*Gunn v. Minton*,
   568 U.S. 251, 133 S. Ct. 1059 (2013) ............................................. 8

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ........................................................... 3, 20-22

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
   593 F.3d 923 (9th Cir. 2010)......................................................... 23

*Hosp. Bldg. Co. v. Rex Hosp. Trs.*,
   425 U.S. 738 (1976) ........................................................................ 9

v

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Kildare v. Saenz*,
  325 F.3d 1078 (9th Cir. 2003)....................................................................... 23

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ......................................................................................... 8

*La Asociacion de Trabajadores de Lake Forest ("LATLF") v. City of Lake Forest*,
  624 F.3d 1083 (9th Cir. 2010).................................................................13, 16

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................... 8, 13

*Max Sound Corp. v. Google, Inc.*,
  147 F. Supp. 3d 948 (N.D. Cal. 2015)............................................................ 8

*Mont. Air Chapter No. 20 v. Fed. Lab. Rel. Auth.*,
  898 F.2d 753 (9th Cir. 1990)......................................................................... 22

*Norton v. S. Utah Wilderness*,
  542 U.S. 55 ..........................................................................................9, 23, 25

*Parks Sch. of Bus. v. Symington*,
  51 F.3d 1480 (9th Cir. 1995).......................................................................... 9

*Pub. Watchdogs v. S. Cal. Edison Co.*,
  2019 WL 6497886 (S.D. Cal. Dec. 3, 2010) .............................................. 22

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
  908 F.3d 476 (9th Cir. 2018).......................................................................... 21

*Shipkovitz v. Dovenmuehle Mortgage, Inc.*,
  2016 WL 6803771 (D. Md. Nov. 17, 2016) ................................................ 25

*Shwarz v. United States*,
  234 F.3d 428 (9th Cir. 2000).......................................................................... 24

*Smith v. Pac. Props. & Dev. Corp.*,

vi

*Defendants' Motion for Dismissal*                                    Case No. 2:19-cv-10048-JAK

358 F.3d 1097 (9th Cir. 2004).................................................................. 14

*Sunshine State Bank v. FDIC,*
783 F.2d 1580 (11th Cir. 1986)............................................................... 21

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ............................................................................... 13

*Torres v. DHS,*
411 F. Supp. 3d 1036 (C.D. Cal. 2019)................................................... 17

*United Poultry Concerns v. Chabad of Irvine,*
743 Fed. Appx. 130 (9th Cir. 2018) ....................................................... 16

*Valle de Sol Inc. v. Whiting,*
732 F.3d 1006 (9th Cir. 2013)................................................................. 14

*Western Mining Council v. Watt,*
643 F.2d 618 (9th Cir. 1981).................................................................... 9

*White v. Lee,*
227 F.3d 1214 (9th Cir. 2000)............................................................. 9, 13

vii

*Defendants' Motion for Dismissal*                    Case No. 2:19-cv-10048-JAK

Statutes

5 U.S.C. § 551(13) ..................................................................................................... 9

5 U.S.C. § 701(a) ..................................................................................................... 20

5 U.S.C. § 702 ..................................................................................................... 20

5 U.S.C. § 704 ..................................................................................................... 9

5 U.S.C. § 706(1) ..................................................................................................... 23

12 U.S.C. §§ 5514-16 ..................................................................................................... 4

12 U.S.C. § 5514(a)(1)(B) ..................................................................................................... 4, 5

12 U.S.C. § 5514(b) ..................................................................................................... 4

12 U.S.C. 5514(b)(2) ..................................................................................................... 24

12 U.S.C. § 5535 ..................................................................................................... 10

12 U.S.C. § 5481 ..................................................................................................... 3

20 U.S.C. § 1070 ..................................................................................................... 5

20 U.S.C. § 1087 ..................................................................................................... 5

Regulations

12 C.F.R. 1290 ..................................................................................................... 5

12 C.F.R. Part 1090 ..................................................................................................... 4

12 C.F.R. § 1070.2(i) ..................................................................................................... 5

*Defendants' Motion for Dismissal*                    Case No. 2:19-cv-10048-JAK

12 C.F.R. § 1070.4 ........................................................................................ 5

12 C.F.R. § 1070.41 ...................................................................................... 5

ix

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Through this lawsuit, Plaintiff Student Debt Crisis ("SDC") conjures, and then attempts to challenge as legally and procedurally deficient in alleged violation of the Administrative Procedure Act ("APA"), a secret "rule" purportedly promulgated by the Consumer Financial Protection Bureau ("CFPB" or "Bureau") that renounces its authority to supervise certain student loan servicers.  This contorted exercise fails to plausibly plead the existence of the purported "rule," however, and recent testimony of the Bureau's Director confirms that the Bureau has not adopted the policy reflected in the purported "rule," but, in fact, believes "we [the Bureau] …have … [the] responsibility and ability to examine the larger participants in the student loan servicing space regardless of which types of loans they are servicing[:] Federal loans and private loans." *Semi Annual Review of the Consumer Financial Protection Bureau*, *Hearing Before the H. Comm. on Fin. Servs.*, 116th Cong. (Feb. 6, 2020) (Testimony of Director Kathleen L. Kraninger) (Transcript (unofficial) excerpts attached to Declaration of Bernard J. Barrett, Jr. at ¶ 2, Ex. 1).  As a result, Plaintiff's claims related to the purported rule should be dismissed because they do not credibly challenge any final agency action, a prerequisite for judicial review under the APA. The complaint's final claim, a challenge to the Bureau's discretionary determination about how to exercise its supervisory authority, should be dismissed because such discretionary conduct is non-reviewable.  Finally, in addition to these fatal defects, and even assuming Plaintiff had plausibly alleged the existence of its imagined rule, Plaintiff's claims should be dismissed because Plaintiff lacks standing to challenge any such rule or the exercise of the Bureau's supervisory authority.

Plaintiff challenges the CFPB's purported adoption of a new rule that "states that the CFPB only has supervisory authority over issues related to student loans owned by private creditors…but not over…loans that are held by the federal

*Defendants' Motion for Dismissal*                                    Case No. 2:19-cv-10048-JAK

government." First Amended Complaint ("FAC") ¶ 7. Under the APA, judicial review is only available over such a claim if it involves agency action that is final. For an action to meet this finality requirement, it must "mark the consummation of the agency's decision-making process" and "must be one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (quotation marks omitted). The operative complaint here (the FAC) does not allege facts that would plausibly support the inference that the Bureau has decided that it does not have authority to supervise servicers of federal student loans. As a matter of actual fact, which this Court can consider for purposes of this motion, the Director of the Bureau recently testified that the Bureau has such authority and is actively exercising it.

Moreover, even if the complaint plausibly alleged final agency action, Plaintiff's claims should be dismissed because Plaintiff lacks standing. Plaintiff, an organization that "advocate[s] for student loan and debt policies" and "directly assists student loan borrowers," does not assert standing on behalf of any of its members. It pleads standing only on its own behalf. However, SDC does not plausibly plead that its organizational mission has been frustrated by the non-existent rule (or any other CFPB action), nor that the non-existent rule (or any other CFPB action) required it to divert resources from specific other activities to combat the challenged conduct, as is required to establish its standing.

Plaintiff also fails to state a plausible claim for relief. Plaintiff alleges that the Bureau engaged in procedurally inadequate rulemaking (Counts I, III), rulemaking that is contrary to law (Count II), and rulemaking that is insufficiently explained (Count IV). But, because Plaintiff has failed to credibly allege that the Bureau has adopted a new rule, these claims necessarily fail. Count V fares no better. Plaintiff alleges that the Bureau has ceased or improperly curtailed its supervision of "servicing of federally held loans by large servicers." But Plaintiff does not allege

*Defendants' Motion for Dismissal*                    Case No. 2:19-cv-10048-JAK

that the Bureau failed to take any particular *discrete* action that it is *required* to take. Absent this, the APA does not provide for the relief Plaintiff seeks.

Likewise, to the extent Count V is attempting to challenge *how* the Bureau chooses to deploy its limited supervisory resources to conduct student loan servicing exams, such agency decisions as to when and how to conduct oversight are presumptively unreviewable under the APA because these decisions involve "a complicated balancing of a number of factors which are peculiarly within" the agency's "expertise." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Perhaps recognizing that its claim about the Bureau not engaging in the amount and type of supervision that Plaintiff would prefer is precluded under the APA, Plaintiff's complaint attempts to cram its challenge into the APA's narrow exception to non-reviewability for policy disputes about an agency's authority. However, this claim is essentially duplicative of Counts I-IV and fails for the same reason. As explained above, Plaintiff fails to plausibly plead the existence of this "rule." As a result, there is no basis to rebut the non-reviewability presumption here, and the Court should decline Plaintiff's request to review how the Bureau exercises its supervisory authority over servicers of federal student loans.

Because the Court lacks jurisdiction and Plaintiff fails to state a plausible claim to relief, the First Amended Complaint should be dismissed.

BACKGROUND

I.   STATUTORY AND REGULATORY BACKGROUND

    A.   <u>The Consumer Financial Protection Bureau</u>

The Consumer Financial Protection Bureau is an independent agency of the United States charged with regulating the offering and provision of consumer financial products and services under federal consumer financial laws, including the Bureau's enabling statute, the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5481, *et seq.* The Bureau ensures compliance with Federal

3

consumer financial laws in part by conducting confidential supervisory examinations of relevant market participants, including banks and credit unions, payday lenders, mortgage originators and servicers, and private student lenders. 12 U.S.C. §§ 5514-16. The Bureau also has supervisory authority over larger participants in consumer financial markets identified through Bureau rulemakings. 12 U.S.C. § 5514(a)(1)(B). To date, the Bureau has promulgated rules to define its authority over larger participants in the following markets: student loan servicing (discussed below), consumer reporting, consumer debt collection, international money transfer, and automobile financing. *See* 12 C.F.R. Part 1090. As a result, it is estimated that the Bureau has supervisory authority over thousands of entities.[1]

Given the large number, size, and complexity of entities falling under its supervisory authority, the CFPA requires the Bureau to conduct supervision by assessing a number of factors to determine what supervision activities it should undertake at any given time.[2] 12 U.S.C. § 5514(b) ("The Bureau shall exercise its authority [to require reports and conduct examinations] … in a manner designed to ensure that such exercise, ... is based on the assessment *by the Bureau* of the risks posed to consumers … and taking into consideration . . . any other factors *that the Bureau* determines to be relevant") (emphasis added).[3] By Bureau rule, information concerning Bureau supervisory activity is non-public "confidential supervisory

---

[1] *See* Prepared Remarks of CFPB Deputy Director Steven Antonakes to the Consumer Bankers Association on March 25, 2015, available at https://www.consumerfinance.gov/about-us/newsroom/prepared-remarks-of-cfpb-deputy-director-steven-antonakes-to-the-consumer-bankers-association/ (estimating the number of entities under Bureau supervision at more than 15,000).

[2] In FY 2019, for example, the Bureau conducted 125 on-site exams (and 477 supervisory events). *See* https://files.consumerfinance.gov/f/documents/cfpb_performance-plan-and-report_fy20.pdf (at 74).

[3] The Bureau prioritizes its supervisory responsibilities by focusing on risks to consumers based on information gathered about each relevant product. *See* https://files.consumerfinance.gov/f/201506_cfpb_supervisory-highlights.pdf (at 25-26).

4

*Defendants' Motion for Dismissal*                          Case No. 2:19-cv-10048-JAK

information." *See* 12 C.F.R. §§ 1070.2(i), 1070.4, and 1070.41.

  B. <u>Loans for Post-Secondary Education</u>

  Loans are essential for many students to obtain post-secondary education, and the vast majority of such loans are made by the U.S. Department of Education pursuant to Title IV of the Higher Education Act, 20 U.S.C. § 1070 *et seq.* *See* FAC ¶ 2. The student loan market is also comprised of loans held by private entities.

  The day-to-day management of borrowers' loans, i.e. the "servicing" of those loans, typically includes maintaining borrowers' account records, sending periodic statements advising borrowers about amounts due and outstanding balances, receiving payments from borrowers, and providing borrowers with information, including about benefits and protection programs. *See* FAC ¶ 3. Loans held directly by the U.S. Department of Education (hereinafter "federal student loans") are serviced by entities that contract with the Department of Education. *Id.*; *see also* 20 U.S.C. § 1087. Servicers may service both federal and private student loans.

  C. <u>CFPB Supervision of Student Loan Servicers</u>

  As explained above, the CFPB has supervisory authority over any covered entity who is "a larger participant of a market for other consumer financial products or services, as defined by rule." 12 U.S.C. § 5514(a)(1)(B). In a rule issued on December 3, 2013, the CFPB defined the larger participants of a market for student loan servicing, over which it has supervisory authority. *See* Bureau of Consumer Financial Protection, *Final Rule: Defining Larger Participants of the Student Loan Servicing Market*, 12 C.F.R. 1290 (Dec. 6, 2013) (hereinafter "2013 Rule"). Through the 2013 Rule, the Bureau defined larger participants in student loan servicing to be those entities that performed (or whose affiliate companies performed) student loan servicing on over one million accounts. *Id.* According to SDC, at least four servicers of federal student loans "qualify as 'larger participant[s] in the student loan servicing market,'" as defined by the 2013 Rule. FAC ¶ 29.

5

Guidelines for supervisory activity over larger participant student loan servicers are included in the currently operative Manual for Supervision Examination Procedures. *See* https://www.consumerfinance.gov/policy-compliance/guidance/supervision-examinations/education-loan-examination-procedures/. ("Manual") (providing specific guidance for "examination of servicing practices in connection with all types of student loans").

Numerous entities are engaged in oversight and supervision of these federal student loan servicers' compliance with the law. The Department of Education can oversee servicers of loans it holds via its contract authority. *See* FAC ¶ 31. As the Complaint recognizes, the CFPB is currently pursuing an enforcement action against Navient Corporation for violations of Federal consumer financial law committed in connection with its servicing of federal student loans. *See id.,* n.15 (citing *CFPB v. Navient Corp.,* No. 3:17-cv-00101 (M.D. Pa.)). Likewise, states' attorneys general and individual borrowers also bring suits to ensure federal student loan servicers are adequately protecting consumers and complying with the law. *See* FAC ¶ 52.

II. RECENT DEVELOPMENTS

On February 6, 2020, CFPB Director Kathleen L. Kraninger testified before the House Financial Services Committee. Among other topics, she repeatedly emphasized that the Bureau has authority to supervise servicers of federal student loans. For example, she testified that "we [the Bureau] do have a larger participant rule in place that gives us responsibility and ability to examine the larger participants in the student loan servicing space regardless of which types of loans they are servicing. Federal loans and private loans." *See* Barrett Decl. at ¶ 2 and Ex. 1. Her March 10, 2020 testimony before the Senate Committee on Banking, Housing, and Urban Affairs similarly reflected this position. *See The Consumer Financial Protection Bureau's Semi-Annual Report to Congress*, *Hearing Before the Sen. Comm. on Banking, Housing, and Urban Affairs*, 116th Cong. (Mar. 10, 2020)

6

*Defendants' Motion for Dismissal*                    Case No. 2:19-cv-10048-JAK

(Testimony of Director Kathleen L. Kraninger) (Transcript (unofficial) excerpts attached to Barrett Decl. at ¶3 and Ex. 2).  When asked at that hearing whether "the CFPB [has] at this point in time resumed supervisory examinations and oversight of companies that service the $1.2 trillion of loans owned by the Federal Government?", Director Kraninger answered affirmatively, noting that CFPB has "an agreement with the Department of Education and [we] are moving forward with a joint exam, in fact, this month." *Id.* at 8.

III.  THIS LAWSUIT

On November 25, 2019, Plaintiff filed this lawsuit.  Plaintiff is an organization that describes itself as a reformer of "higher education loan policies." *See https://studentdebtcrisis.org/about/.* It engages with "media and legislators;" educates "borrowers and higher education experts with lectures, webinars, and special events;" and works with borrowers "to understand their challenges and fears." *Id.* Its operative complaint, the FAC,[4] alleges principally that the Bureau has adopted a "New Supervision Rule," through which the Bureau has allegedly limited the scope of its supervisory authority to only those student loans owned by private creditors, and not loans held by the federal government. SDC seeks vacatur of the purported new rule, as well as an "[o]rder that the CFPB resume supervising nonbank 'larger participant[s] of the student loan servicing market,' including those servicing federally held student loans." Prayer for Relief, at ¶¶ 2, 4.

The FAC specifies five claims:  Plaintiff alleges that the Bureau adopted a new position about CFPB lacking authority to supervise federal student loan

---

[4] The original complaint contained the same five claims as the FAC, and also asked the Court to order the Bureau and the Department of Education to "issue the MOU [Memorandum of Understanding] as required by Dodd-Frank within 30 days of the Court's order." *Id.*, ¶ 5.  On February 21, 2020, after the Bureau executed a new MOU, the parties stipulated that Plaintiff could amend its Complaint to remove its challenge to the lack of an MOU. *See* ECF No. 26. The FAC (ECF No. 28) was filed on March 2, 2020.

*Defendants' Motion for Dismissal*                    Case No. 2:19-cv-10048-JAK

servicers through a procedurally inadequate rulemaking (Counts I, III), that the purported new rule is insufficiently explained (Count IV), and that it is contrary to the Dodd-Frank Act and CFPB's regulations because it unlawfully curtails the CFPB's supervisory authority (Count II). Plaintiff also alleges that the Bureau has ceased or improperly curtailed its supervision of "servicing of federally held loans by large servicers" (Count V).   Plaintiff does not purport to be proceeding on behalf of any individual student borrower or member of its organization.

## LEGAL STANDARD

Defendants move to dismiss pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. Federal courts are courts of limited jurisdiction, and are only authorized to adjudicate those cases which the Constitution and the laws of Congress permit. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Gunn v. Minton*, 568 U.S. 251, 133 S. Ct. 1059, 1064 (2013).   Standing is properly challenged through a Fed. R. Civ. P. 12(b)(1) motion because it is "a threshold jurisdictional issue."   *Max Sound Corp. v. Google, Inc.*, 147 F. Supp. 3d 948, 952 (N.D. Cal. 2015) (citation omitted).   As the party invoking federal jurisdiction, Plaintiff bears the burden of showing standing by establishing, *inter alia*, that it has suffered an injury in fact, *i.e.* a concrete and particularized, actual or imminent invasion of a legally protected interest, that is fairly traceable to the challenged action of defendant and likely to be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

When considering a motion to dismiss for lack of jurisdiction, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).   "With a factual Rule 12(b)(1) attack … a court may look beyond the complaint to matters of public record without having to convert the motion into

8

one for summary judgment." *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000); *Am. Diabetes Ass'n v. U.S. Dep't of the Army,* 938 F.3d 1147, 1151 (9th Cir. 2019).

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint should be dismissed if it does not contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistereri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a complaint under this standard, the court must accept as true the allegations in the complaint, *see Hosp. Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), and it construes the pleading in the light most favorable to plaintiff. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). However, the court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## ARGUMENT

I.   COUNTS I-IV SHOULD BE DISMISSED BECAUSE THEY DO NOT CHALLENGE FINAL AGENCY ACTION AND FAIL TO PLAUSIBLY STATE A CLAIM

Counts I-IV should be dismissed because the Court lacks jurisdiction over these claims, which do not challenge final agency action. Under the APA, a plaintiff may seek judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. An "agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13); *Norton v. S. Utah Wilderness All. (SUWA )*, 542 U.S. 55, 62 (2004). To be final, an agency action must satisfy two conditions. "*First*, the action must mark the consummation of the agency's decision-

9

making process--it must not be of a merely tentative or interlocutory nature." *Second*, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 177-78.

The FAC does not come close to plausibly alleging that the Bureau has adopted a policy meeting these criteria that the Bureau would have been required to promulgate under notice-and-comment rulemaking. The entirety of the proof Plaintiff offers for its dramatic conclusion are two out-of-context statements. First, Plaintiff alleges that "In September 2018, then-Acting CFPB Director Mick Mulvaney announced the New Supervision Rule." FAC ¶ 69. But the FAC does not and cannot point to any "announcement" of any actual "rule;" instead it relies on former Director Mulvaney's response during a television interview to a question about CFPB's former Private Education Loan Ombudsman ("PELO"). This off-hand response was offered in the context of a discussion of the section of the Dodd-Frank Act that established the PELO position—a position which has no responsibility for managing, directing, or overseeing the Bureau's supervision program. *See* 12 U.S.C. § 5535. This was not a fulsome discussion of the Bureau's authority over larger participants in the student loan servicing market. *See Id.* n.23; CNBC, *Watch CNBC's Full Interview with OMB's Mick Mulvaney* (Sept. 12, 2018) https://www.cnbc.com/video/2018/09/12/watch-cnbcs-full-interview-with-ombs-mick-mulvaney.html (not mentioning the "larger participant" part of the statute that authorizes the Bureau's work vis-a-vis federal student loan servicers, and offering the quoted language in reaction to a statement by the former PELO, after introducing it with "here's what we did at *his* [the prior PELO's] *part* of the student loan operation").[5] This attenuated statement in a media interview by a former Bureau

---

[5] The content of the relevant section of this interview is at Barrett Decl., ¶¶ 4-5.

10

*Defendants' Motion for Dismissal*                          Case No. 2:19-cv-10048-JAK

acting director cannot be taken as a plausible description of current agency policy regarding its authority to supervise larger participants in student loan servicing.

The FAC's second attempt at demonstrating the purported new rule is similarly unavailing.  It cites an out-of-context statement by the Bureau's current Director, Kathleen L. Kraninger, indicating that questions about why a particular percentage of applications for the Public Service Loan Forgiveness ("PSLF") program are denied should be directed to the Department of Education.  Contrary to the FAC's allegation that this statement "confirms" CFPB has "cede[d] [its] supervision over larger federal student loan servicers," FAC ¶ 71, this statement does no more than state the obvious point that questions about the operation of a particular government program are appropriately addressed in the first instance to the agency administering that program.  It says nothing about whether the Bureau believes it has authority to supervise entities who may have been involved in servicing the loans of particular PSLF applicants. The FAC also does not contain any allegation that the Bureau has amended its Supervision and Examination Manual to excise procedures for examinations of federal loan servicers or taken any other actions that would accompany a consummated Bureau decision that it lacks authority to supervise such servicers.

The FAC's attempts to buttress these threadbare allegations are undermined by its contradictory descriptions of what the Bureau is doing to supervise larger participants in student loan servicing; it alternates between suggesting that the Bureau is conducting *no* supervision of federally-held student loans, *see e.g.*, ¶ 68 ("the CFPB has changed its policy on its supervisory authority over the servicing of federally held student loans by large servicers," meaning that the CFPB would not be responsible for issues related to servicing federal student loans), and claiming that it is doing *less* work than Plaintiff would prefer in this space, *see id.* ¶ 111 (claiming that CFPB supervision of the servicing of federally held student loans "has ceased

11

or" has been "curtailed"); ¶ 72 (acknowledging CFPB "efforts to address problems with the PSLF program"). Such inconsistent allegations do not plausibly plead the existence of a new "rule."

The FAC, therefore, does not plausibly plead the existence of any decision that can be taken to mark the consummation of an agency decision-making process, from which legal rights will flow, especially where statements from the Bureau's current leadership disprove Plaintiff's allegations.[6] Absent a plausible allegation of final agency action, the court should dismiss Counts I-IV.

Having failed to plausibly plead the existence of final agency action, Plaintiff's threadbare and contradictory allegations necessarily also fail to plausibly plead the existence of the purported new "rule." *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)*; Baker v. Rodriguez*, No. SACV 11–00138-JST (PJWx), 2011 WL 4529644, at *6 (C.D. Cal. Sept. 29, 2011) (*"Because Plaintiff makes such contradictory allegations, the FAC does not sufficiently identify the challenged policy"). Since Plaintiff has failed to plausibly allege the existence of a rule revoking the Bureau's supervisory authority, the promulgation of this non-existent rule could not have been procedurally inadequate, insufficiently explained, or contrary to law, and Counts I-IV must be dismissed.

## II.   PLAINTIFF LACKS STANDING

Regardless of what type of action Plaintiff's claims are understood to challenge, they cannot proceed because Plaintiff lacks standing to bring them. "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies'" and "[t]he doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately

---

[6] As described above, the Bureau's Director recently testified that the Bureau has authority to examine the "larger participants" in the market for student loan servicing, including those that service federal loans.

*Defendants' Motion for Dismissal*                              Case No. 2:19-cv-10048-JAK

resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (citation omitted). The "irreducible constitutional minimum of standing" has three elements: (1) that a plaintiff suffer a concrete injury-in-fact, (2) that the injury be fairly traceable to the challenged action of the defendant, and (3) that it be likely (as opposed to speculative) that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted). The same three-pronged inquiry is conducted whether the plaintiff is an individual or an organization. *La Asociacion de Trabajadores de Lake Forest ("LATLF") v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

    A.   <u>Plaintiff Does Not Plausibly Plead a Cognizable Injury In Fact</u>

    SDC hinges its standing on the injury it allegedly suffered as a result of the Bureau purportedly adopting the "New Supervision Rule." *See* FAC ¶ 19.[7] But the Complaint does not plausibly plead the existence of a New Supervision Rule, and the recent testimony[8] of CFPB Director Kraninger confirms that the Bureau has <u>*not*</u> adopted the position that it lacks authority to supervise the "servicing of federal held student loans by larger servicers." This failure to plausibly plead the allegedly injurious conduct is itself fatal to Plaintiff's standing.

    Even if Plaintiff plausibly pled the existence of the allegedly injurious conduct, the FAC should be dismissed because it does not plausibly allege that the

---

[7] Plaintiff's standing theory is muddled and does not even directly reference Count V. SDC hinges its standing on the injury it allegedly suffered as a result of the Bureau purportedly adopting the "New Supervision Rule." *See* FAC ¶ 19. The FAC says nothing about whether Plaintiff has standing to bring Count V which, unlike the other counts, does not even mention the putative new rule. *See id.* ¶¶ 108-111. Absent any attempt to establish standing to bring this claim, the Court should dismiss this Count. To the extent Plaintiff conceives of Count V as a manifestation of, or otherwise in relation to, the purported New Supervision Rule, Plaintiff lacks standing for the same reasons it lacks standing to bring Counts I-IV.

[8] "With a factual Rule 12(b)(1) attack … a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment.'" *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). *See also Am.*

*Defendants' Motion for Dismissal*                    Case No. 2:19-cv-10048-JAK

Bureau action it challenges—adoption of a purported New Supervision Rule—frustrated SDC's organizational mission or caused it to divert resources.  In the Ninth Circuit, to establish the first prong for standing ("injury in fact"), an organization bringing suit on its own behalf must demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular challenged behavior.  *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004).  An organization that is "merely going about its business as usual," does not have standing.  *Am. Diabetes Assoc*, 938 F.3d at 1155.

### 1.    *No Frustration of Organizational Mission*

To plead the requisite mission frustration, an organizational plaintiff must plausibly claim that the challenged conduct "frustrates the [plaintiff] organization's goals," *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011), *i.e.*, that the challenged "practices have perceptively impaired [the organizational plaintiff's] ability to provide [the services it was formed to provide]." *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 748 (9th Cir. 1991).  Thus, the Ninth Circuit has acknowledged mission frustration as a sufficient basis for standing when, for example, a state law subjected plaintiff's staff to potential investigation or prosecution for doing their jobs. *See Valle de Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013).  Similarly, the Ninth Circuit found legal services groups had standing to challenge a policy of providing only partial translation of immigration court proceedings because that policy frustrated the groups' mission of trying to "obtain asylum and withholding of deportation" for their clients. *El Rescate*, 959 F.2d at 748.

Here, however, SDC fails to explain how Defendants' conduct impairs SDC's

---

*Diabetes Ass'n*, 938 F.3d at 1151(Where a "defendant brings a factual jurisdictional attack under Rule 12(b)(1), the 'court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.'").

*Defendants' Motion for Dismissal*                              Case No. 2:19-cv-10048-JAK

ability to provide the services it was formed to provide, or otherwise frustrates the organization's mission. SDC claims its "mission" is "to assist student borrowers through advocacy and educational programs," FAC ¶ 13, and notes that it "advocate[s] for student loan and debt policies through legislative efforts and through the media," and "also directly assists student loan borrowers through direct communications, lectures, webinars and special events." FAC ¶ 19(a). The FAC provides no evidence that the purported New Supervision Rule would prevent SDC from advocating for student loan and debt policies through legislative efforts or directly assisting student loan borrowers through direct communications, webinars and special events.[9] SDC's formulaic allegation that it has been impaired from "providing the services it was formed to provide" because it has to redirect its resources to assist its supporters "in seeking and obtaining student loan assistance" is insufficient, because helping borrowers obtain loan assistance _is_ what SDC "was formed to provide." _See, e.g._ FAC ¶ 13 (SDC "directly assists student loan borrowers through direct communications," etc), 19.[10]

---

[9] The FAC's allegations about what SDC has done in the wake of the putative rule undermine any notion that it has suffered "concrete and demonstrable injury to [its] activities." Rather than pleading an inability to advocate or assist student borrowers through direct communications and special events, as would be required, the FAC makes clear that, in the wake of the putative rule, Plaintiff has significantly _increased_ these activities. FAC ¶ 19(e) (SDC has increased the number of its student debt workshops and "increased its direct communications … by more than double").

[10] Plaintiff's allegation that "[a]s a result of the New Supervision Rule, the CFPB is no longer a viable resource for SDC's supporters seeking student loan assistance," FAC ¶ 19(c), also cannot establish the mission impairment required for standing. Notably, SDC originally claimed that the Bureau was no longer a viable resource because it no longer had in place an agreement to share with the Department of Education complaints about student loan servicers. _See_ Compl. ¶ 22c ("SDC directed its members to submit complaints to CFPB knowing that information about such complaints would be available to and shared with [ED] because of then existing MOUs…As a result of the Challenged Actions [including the lack of an MOU requiring complaint sharing], the CFPB is no longer a viable resource for SDC's supporters"). Because the parties subsequently entered into an MOU, Plaintiff amended its complaint to remove the allegations related to the lack of an MOU. But removing this information negated the connection between the Bureau's alleged

_Defendants' Motion for Dismissal_                    Case No. 2:19-cv-10048-JAK

2.   *Plaintiff Did Not Divert Resources to Combat Challenged Conduct*

In addition to failing to plausibly plead that its mission has been frustrated, SDC does not plausibly plead that it has had to alter its "resource allocation to combat the challenged practices." *Am. Diabetes Assoc.*, 938 F.3d at 1154.   An organizational plaintiff can establish standing if a challenged practice "has required, and will continue to require, a diversion of resources . . . from [the organization's] other initiatives," *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 766 (9th Cir. 2018), and the plaintiff organization "would have suffered some other injury if it had not diverted resources to counteracting the [challenged conduct]," *LATLF*, 624 F.3d at 1088.[11]  A diversion of resources, even if it presents cost to Plaintiff, is insufficient to establish organizational standing if "it results not from actions taken by [Defendant] but rather [Plaintiffs'] own budgetary choices." *United Poultry Concerns v. Chabad of Irvine*, 743 Fed. App'x 130, 131 (9th Cir. 2018) (unpublished).

The FAC fails to establish SDC's standing because it does not plausibly allege that SDC had to divert resources from other organizational initiatives in order to combat the purported New Supervision Rule.   SDC alleges that it "has had to increase the number of its student debt workshops" and that it "increased its direct

---

conduct and whether or not it is a viable resource. As currently pled, the FAC offers no plausible explanation for how the putative new rule renders the Bureau no longer a "viable resource." Even if the Bureau conducted the exact amount of supervision plaintiff seeks, the *confidential* exam results would not be available to Plaintiff or its supporters. And even if the FAC could be read to plausibly explain how the Bureau was no longer a "viable resource," whether or not the Bureau is such a resource does not determine if SDC's mission (advocacy through legislative/media efforts and direct assistance to student loan borrowers) is frustrated.

[11] *See Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 632 Fed. App'x 905, 909 (9th Cir. 2015) (Chhabria, J., concurring) ("it might not be enough merely to choose to divert resources: current precedent might be understood to require the organization to show that it was 'forced' to divert resources to avoid or counteract an injury to its own ability to function").

16

*Defendants' Motion for Dismissal*                          Case No. 2:19-cv-10048-JAK

communications relating to consumer education and awareness by more than double." FAC ¶ 19(e).  It also claims to have developed custom workshops "to better address the growing need for direct services," "increased consumer protection-related work," and expended resources in order to support this (*i.e.* hired additional staff, secured shared workspace, expanded its email platform, and conducted consumer research). *Id*. at 19(f).  SDC does not, however, plausibly allege that it would be injured if it did not provide these additional services, nor does it identify any specific services it was "formed to provide" that it can no longer provide because of the alleged diversion of resources.  SDC's generic allegation that the purported new rule "caus[ed] SDC to redirect its resources from other projects," is insufficient; organizational standing exists where the plaintiff has more specifically alleged how it has been required to divert resources as a result of the challenged action. *See, e.g., Torres v. DHS*, 411 F. Supp. 3d 1036, 1054 (C.D. Cal. 2019) (plaintiff lacks standing because alleged diversion of resources "is too tenuously linked" to the challenged conduct); *c.f. East Bay*, 932 F.3d at 766 (finding standing because challenged rule will require plaintiff to convert its asylum practice into a removal defense program and file more applications for certain types of clients, which will divert resources from providing aid to other clients).

Plaintiff's alleged "diversion" of resources boils down to a claim that SDC is providing more of the same type of services it was formed to provide: "advoca[cy] for student loan and debt policies" and "direct[ ] assist[ance] [to] student loan borrowers." FAC ¶ 19.[12]  Where a plaintiff is engaging in activities it "perform[s]

---

[12] The FAC does not explain how the workshops SDC is now providing differ from the "webinars and special events" it offered prior to the putative Rule, *see* FAC ¶ 19(e), whether research it is now conducting is a new activity, *see id.* ¶ 19(f), or how the assistance it is now offering "its supporters in seeking and obtaining student loan assistance" is any different than the personal assistance the organization always offers borrowers. *See https://studentdebtcrisis.org/about/* (SDC "takes a personal

on a regular basis independent of the [defendant's] conduct," its standing depends on whether it is "expending additional resources to make up for the void" left by the purported government action that would have been spent on "some other aspect of their organizational purpose." *Friends of the Earth v. Sanderson Farms, Inc.*, No. 17-cv-03592-RS, 2019 WL 3457787, at *4 (N.D. Cal. July 31, 2019). But SDC's actions cannot "make up for a void" created by the challenged conduct; even if the Bureau had adopted a purported no-supervision-of-federal-student-loan-servicers rule, any gap created would be a gap in *supervision* of loan servicers, which Plaintiff, an advocacy organization, is not itself in a position to undertake.[13] The FAC does not allege the kind of "counteracting" conduct that is sufficient to establish an organization's standing.

B.   Plaintiff Does Not Plausibly Plead Causation or Redressability

Because Plaintiff has suffered no cognizable injury in fact, it necessarily follows that it has not pled the other elements of standing; that the cognizable injury is fairly traceable to the Bureau's conduct and that it is likely (not speculative) that the injury would be redressed by a decision favorable to Plaintiff. But even if

---

approach to member needs—working directly with borrowers to understand their challenges and fears, repayment obstacles and frustrations").

[13] Instead, it is continuing to do essentially the same activities as before the putative challenged rule change, claiming the increase is necessary, *see, e.g.*, FAC ¶ 19(e)(purported rule "forced" SDC to "increase the number of its" workshops) without plausibly tying that necessity to the challenged, putative rule. This is insufficient to establish standing: Any suggestion that an organization need only label an expenditure as "necessary" to confer standing would contradict the Supreme Court's admonition that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on nonparanoid fear." *Id.* Plaintiff's allegations about responding to increased consumer complaints "that would have previously been addressed by CFPB," *see* FAC 19(e) are similarly deficient because the FAC implies they are self-inflicted. *See* FAC ¶ 19(c) (indicating SDC directed its members to submit complaints to CFPB "[p]rior to the New Supervision Rule," but no longer does so). Notably, the FAC does not allege that the Bureau's complaint handling process has changed.

*Defendants' Motion for Dismissal*                                          Case No. 2:19-cv-10048-JAK

Plaintiff had plausibly pled that it was suffering injury, it lacks standing because it does not plausibly plead that the alleged conduct (the Bureau adopting a new "rule" that it would not examine certain conduct) caused that injury or that the injury would be redressed if Plaintiff was awarded the relief it seeks.

At bottom, Plaintiff's alleged standing turns on a theory that the CFPB is failing to supervise federal student loan servicers, thus the servicers are breaking the law more, thus borrowers need more assistance from private organizations such as themselves, and thus it is doing more work to help borrowers. This attenuated causal chain is insufficient to support standing. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 (2013) (expressing "our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors"). There are many reasons why borrowers might seek more help from SDC, including their own financial distress or the roll-out of new student loan programs. And servicers have many incentives to comply with (or disregard) the law, apart from the quantity of supervision being conducted by the Bureau.

SDC has not—and could not—plead that the Bureau has stopped exercising its authority against federal student loan servicers that violate the law, for example, because the FAC acknowledges that at least one such lawsuit by the CFPB is currently ongoing. FAC n.15. As also acknowledged in the Complaint, federal student loan servicers are also currently defendants in multiple consumer-protection lawsuits, including suits brought by multiple states. *See Id.* Further, the Department of Education can monitor its servicers for contract and program compliance, and servicers are also subject to private litigation. [14] Plaintiff does not plausibly explain

---

[14] *See, e.g.,* Navient Corporation, May 1, 2020 Quarterly Report at 77, available at: https://navient.com/about/investors/stockholderinfo/secfilings/ ("The Company has been named as defendant in a number of putative class action cases alleging violations of various state and federal consumer protection laws . . . The Company has also been named as a defendant in putative class actions alleging violations of

*Defendants' Motion for Dismissal*                    Case No. 2:19-cv-10048-JAK

how, in this multi-actor space, any alleged impairment of its mission or diversion of resources from its core functions is attributable to CFPB's purported decision about its authority to supervise federal student loan servicers.  Similarly, even if the Court were to find the Bureau's alleged New Supervision Rule were unlawful, the FAC does not adequately plead that it is likely that SDC's alleged injury would be redressed.  The FAC should be dismissed.

III.   COUNT V SHOULD BE DISMISSED

In addition to Plaintiff's lack of standing, *see supra* n. 7, Count V should also be dismissed because the APA does not provide for review of the conduct it challenges and because Count V fails to plausibly state a claim.  In Count V, Plaintiff alleges that the Bureau has "ceased or improperly curtailed" its supervision over the servicing of federally held student loans, and that this constitutes agency action "'unlawfully withheld' and 'unreasonably delayed' in violation of the APA.'"

   A.   SDC's Challenge to CFPB's Exercise of Its Supervisory Authority (Count V) is Non-Justiciable

Even if Plaintiff had standing to bring Count V, this claim should be dismissed because the Court does not have jurisdiction to review the purported agency conduct it challenges. The Administrative Procedure Act (APA) provides that agency action is reviewable, except when statutes preclude judicial review or when such action is committed to agency discretion by law.  5 U.S.C. §§ 701(a) and 702 (1988). An agency's decision not to take oversight action generally falls under this second exception, and is presumed to be immune from judicial review because these decisions involve "a complicated balancing of a number of factors which are peculiarly within" the agency's expertise. *Heckler v. Chaney*, 470 U.S. at 831, 838

---

various state and federal consumer protection laws related to borrowers and the Public Service Loan Forgiveness program").

20

("within that exception [to reviewability for action committed to agency discretion] are included agency refusals to institute investigative or enforcement proceedings").

CFPB's supervisory examinations are a category of financial oversight investigations. *See Guardian Federal Savings and Loan v. FSLIC*, 589 F.2d 658, (D.C. Cir. 1978) ("The term 'examinations' encompasses not only 'bank examinations,' a term of art that has developed over the years, but also such other financial investigations as [the regulator] in its judgment deems necessary for its protection and the protection of other insured institutions.") (footnote omitted).[15] Decisions about whether to engage in such oversight work are discretionary, *see e.g.*, *Golden Pac. Bancorp v. Clarke*, 837 F.2d 509 (D.C. Cir. 1988), and covered by *Heckler*'s presumption of immunity from judicial review. *See* 470 U.S. 838 (exception to general reviewability of agency action covers "refusals to institute *investigative* or enforcement proceedings") (emphasis added).

Plaintiff's request for judicial review here appears to hang on the question left open by the Supreme Court in *Heckler*: whether a "refusal by the agency to institute proceedings based solely on the belief that it lacks jurisdiction" might be reviewable notwithstanding this general rule, *see Regents*, 908 F.3d at 495. The Ninth Circuit has confirmed that *Heckler*'s "presumption of non-reviewability 'may be overcome if the refusal is based solely on the erroneous belief that the agency lacks

---

[15] Courts have often acknowledged that financial institution examinations provide the bases for enforcement action. *See e.g.*, *Golden Pac. Bancorp v. Clarke*, 837 F.2d 509 (DC Cir. 1988) (bank regulatory action follows surprise investigation by examiners), *Sunshine State Bank v. FDIC*, 783 F.2d 1580 (11th Cir. 1986) (FDIC entitled to rely on examiners' conclusions to support findings and sanctions in administrative proceeding); *Del Junco v. Conover*, 682 F.2d 1338 (9th Cir. 1982) (periodic examination leads to OCC administrative proceeding); *Citizens State Bank of Marshfield, Mo. v. FDIC*, 751 F.2d 209 (8th Cir. 1984) (administrative charges filed pursuant to consumer compliance exam); *First Nat'l Bank of Eden, S.D. v. Dept. of Treasury, OCC*, 568 F.2d 610 (8th Cir. 1978) (administrative charges substantiated by bank examiner testimony).

*Defendants' Motion for Dismissal*                    Case No. 2:19-cv-10048-JAK

jurisdiction'" or upon the express adoption of a general policy so extreme as to amount to an abdication of the agency's statutory responsibilities. *Id.* (evaluating request to dismiss on these grounds pursuant to Fed R. Civ. P. 12(b)(1)); *Mont. Air Chapter No. 29 v. Fed. Lab. Rel. Auth.*, 898 F.2d 753, 755 (9th Cir. 1990).   As already explained fully above, *supra* 10-12, there is no basis set out in the FAC to conclude that the Bureau doubts its authority in order to rebut this presumption.

Plaintiff's implausible claims about a purported "rule" and the Bureau's alleged abandonment of its authority clearly demonstrate an attempt to evade the *Heckler* non-reviewability doctrine and cram Plaintiff's claims into the exception to non-reviewability.   But even under the identified exception, a court can review the agency action only where an agency "expressly" adopted a policy of "abdication," and Plaintiff here does not even attempt to argue that the Bureau has *expressly* adopted such a policy.   *See, e.g.*, *Pub. Watchdogs v. S. Cal. Edison Co.*, No. 19-CV-1635 JLS (MSB), 2019 WL 6497886, at *10 (S.D. Cal. Dec. 3, 2010).   And, in any event, as explained above, the FAC does not plausibly allege that the Bureau has determined it lacks authority to supervise servicers of federal student loans.   Because Plaintiff fails to plausibly identify any reason that the presumption against reviewability should not apply, Count V should be dismissed.

Moreover, the court can look beyond the Complaint to evaluate whether the court has jurisdiction, and recent testimony of the CFPB Director makes clear that the Bureau is not refusing to conduct examinations, let alone doing so based solely on the belief that it lacks jurisdiction.   In recent sworn testimony, Director Kraninger repeatedly confirmed that the Bureau *does* believe that it has authority to supervise larger participants in the student loan servicing market (including federal student loan servicers), and that it is working on such supervisory activities. *See* Barrett Dec. at ¶¶2, 3; Ex. 1,2. Plaintiff thus fails to plausibly plead that the Bureau has "expressly adopt[ed] a general policy" as to servicers of federal student loans that amounts to

*Defendants' Motion for Dismissal*                    Case No. 2:19-cv-10048-JAK

an abdication of its statutory responsibilities, and fails to rebut the presumption that the court cannot review any purported non-supervisory activity by the Bureau.

        B.    <u>The FAC Fails to Plausibly State a Claim as to Count V</u>

        In Count V, Plaintiff alleges that the Bureau has "ceased or improperly curtailed" supervision over the servicing of federally held student loans by large servicers. FAC ¶ 111. Correspondingly, the Complaint requests that the Court "[o]rder that the CFPB resume supervising nonbank 'larger participant[s] of the student loan servicing market,' including those servicing federally held student loans." Compl., Prayer for Relief 4. Plaintiff bases this request on Section 706(1) of the APA, which provides that a court "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). But a court can compel agency action under Section 706(1) of the APA only if there is "a specific, unequivocal command" placed on the agency to take a "discrete agency action," and the agency has failed to take that action. *SUWA*, 542 U.S. at 63-64 (citation omitted). The agency action must be pursuant to a legal obligation "so clearly set forth that it could traditionally have been enforced through a writ of mandamus." *See Hells Canyon Pres. Council v. U.S. Forest Serv.,* 593 F.3d 923, 932 (9th Cir. 2010).[16] In the absence of a command to carry out "a ministerial or non-discretionary act," about which the agency has "no discretion" whatsoever, *SUWA*, 542 U.S. at 63-65, agency action cannot be deemed unlawfully withheld. *Id*. Because Count V seeks to compel agency action that is neither discrete nor mandatory, Count V fails as a matter of law.

        Plaintiff does not and cannot cite any statutory or legal requirement that the

---

[16] "Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be **free from doubt**, and (3) no other adequate remedy is available." *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003) (emphasis added).

*Defendants' Motion for Dismissal*              Case No. 2:19-cv-10048-JAK

Bureau conduct a specific examination at a particular time, or even that the Bureau conduct any specific number of exams in any specific area at any time. The 2013 Rule merely defined what it meant for a student loan servicer to be a "larger participant" in the market subject to the Bureau's supervision; it does not command that the Bureau engage in any particular quantum of supervision. Plaintiff cannot cite such a requirement because Congress intended for the Bureau, in its discretion, to make such programmatic decisions related to its supervisory efforts based on "factors that the *Bureau* determines to be relevant." 12 U.S.C. § 5514(b)(2) (emphasis added).[17] The Bureau's supervisory authority extends over thousands of entities and numerous consumer financial products and services, and Congress intended for the Bureau, not litigants or the court, to make the determinations about when and how to best exercise that supervisory authority.

Plaintiff has not, and could not, plead that the Bureau has ceased examining larger participants in the student loan market entirely. Instead, Plaintiff's claim boils down to an assertion that the Bureau is "unlawfully withholding" the amount and particular type of supervisory activity that SDC would prefer.[18] But, as a matter of law, the Court cannot order the Bureau to engage in additional or particular supervision of particular loans or topics, because of the inherently discretionary

---

[17] The frequency and scope of its supervision, and the particular product lines and legal issues that are the focus of supervisory efforts, is established by Bureau management, and entities are identified for supervision on the basis of risks to consumers, and other factors determined relevant by CFPB. *See* 12 U.S.C. § 5514(b)(2).

[18] Materials in the public record demonstrate that the Bureau *is* engaged in supervisory activity in this space. *See* Barrett Decl. ¶ 3 and Ex. 2 (Mar. 10, 2020 hearing unofficial transcript excerpts). To the extent Plaintiff's claim is based on the Bureau's failure to engage in any supervisory activity over federal loan servicers, Plaintiff has failed to *plausibly* allege such failure and the claim should be dismissed. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000) (in ruling on a Rule 12(b)(6) motion, court need not accept as true "allegations that contradict facts that may be judicially noticed by the court").

*Defendants' Motion for Dismissal*                                  Case No. 2:19-cv-10048-JAK

nature of the Bureau's oversight functions.  In recognition of the discretionary nature of Bureau supervisory work, courts have rejected requests for mandamus relief like what Plaintiff seeks here.  In *Shipkovitz v. Dovenmuehle Mortgage, Inc.*, No. 8:16-cv-00712, 2016 WL 6803771, at *3-4 (D. Md. Nov. 17, 2016), for example, the court declined to order mandamus relief against the CFPB, recognizing that "the CFPB's investigatory responsibilities are discretionary" and that "the CFPB's decision to investigate a complaint is not a 'mandatory or ministerial obligation . . . so plainly prescribed as to be free from doubt."  This Court should reach the same result and dismiss Count V.  Failing to do so, would "mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the [relevant statute], injecting the judge into day-to-day management."  *SUWA*, 542 U.S. at 66-67.  "The APA does not contemplate … such oversight." *Bannister v. U.S. Parole Comm'n*, 2020 WL 85229 at *3 (D.D.C. Jan. 7, 2020).

CONCLUSION

For the foregoing reasons, the Court should grant the Bureau's motion to dismiss.

DATED: May 6, 2020    Respectfully submitted,

*/s/* Bernard J. Barrett Jr.
Bernard J. Barrett, Jr. (CA Bar No. 165869)
Consumer Financial Protection Bureau
1700 G Street, N.W.
Washington, D.C. 20552
Telephone: (202) 435-9396
Facsimile: (202) 435-7024
Bernard.barrett@cfpb.gov

*Counsel for Defendants*

*Defendants' Motion for Dismissal*    Case No. 2:19-cv-10048-JAK