MARY McLEOD
General Counsel
JOHN R. COLEMAN
Deputy General Counsel
LAURA M. HUSSAIN
Assistant General Counsel
BERNARD J. BARRETT JR. (CA Bar No. 165869)
Consumer Financial Protection Bureau
1700 G Street, N.W.
Washington, D.C. 20552
Telephone: (202) 435-9396
Facsimile: (202) 435-7024
Email:  Bernard.barrett@cfpb.gov

*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDENT DEBT CRISIS,<br><br>Plaintiff,<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU, *et al.,*<br><br>Defendants. | Case No. 2:19-cv-10048-JAK<br><br>**DEFENDANTS' REPLY IN SUPPORT MOTION FOR DISMISSAL**<br><br>Date:   October 19, 2020<br>Time:   8:30 a.m.<br>Dept:   Courtroom 10B<br>Judge:  Hon. John A. Kronstadt |

# TABLE OF CONTENTS

TABLE OF AUTHORITES ................................................................................... ii

INTRODUCTION ................................................................................................ 1

ARGUMENT ........................................................................................................ 1

I.   The FAC Fails to Plausibly Allege a Final Agency Action Necessary for Jurisdiction and Fails to Plausibly State Any Claim ......................................... 1

II.  This Court Must Dismiss This Action Now for Lack of Jurisdiction ............... 4

III. The FAC Fails to Plausibly Allege Standing ..................................................... 5

IV.  The Bureau's Conduct of Supervisory Examinations is Non-Justiciable and Not Actionable Under Section 706(1) ............................................................. 8

CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITES

**CASES**                                                                             **Page(s)**

*Dietz Int'l Pub. Adjusters of Cal., Inc. v. Evanston Ins. Co.*,
  No. CV 09-06662 MMM (Ex), 2009 WL 10673937
  (C.D. Cal. Dec. 14, 2009) ............................................................................. 3, 6

*East Bay Sanctuary Covenant v. Trump*,
  932 F.3d 742 (9th Cir. 2018) ............................................................................. 7

*Havasupai Tribe v. Provencio*,
  906 F.3d 1155 (9th Cir. 2018) ........................................................................... 5

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ......................................................................................... 5

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ......................................................................................... 9

*Hispanic Affairs Project v. Acosta*,
  901 F.3d 378 (D.C. Cir. 2018) ....................................................................... 3, 4

*Norton v. S. Utah Wilderness,
  All.*, 542 U.S. 55 (2004) ................................................................................. 10

*Perez v. Indian Harbor Ins. Co.*,
  No. 4:19-cv-07288-YGR, 2020 WL 2322996 (N.D. Cal. May 11, 2020) ............ 4

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ........................................................................... 5

*San Carlos Apache Tribe v. U.S.*,
  417 F.3d 1091 n.2 (9th Cir. 2005) ..................................................................... 5

*San Francisco Herring Ass'n v. Dep't. of Interior*,
  946 F.3d 564 (9th Cir. 2019) ............................................................................. 5

*San Luis Food Producers v. U.S.*,
  709 F.3d 798 (9th Cir. 2013) ......................................................................... 5, 10

*Smith v. Pacific Properties & Dev. Corp.*,
   358 F.3d 1097 (9th Cir. 2004) .................................................................................. 5

*Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*,
   711 F.2d 138 (9th Cir. 1983) .................................................................................... 5

**STATUTES**

12 U.S.C. § 5514(a)(1)(B), (b)(1) ................................................................................ 9

12 U.S.C. § 5514(b) ..................................................................................................... 9

**RULES**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 1, 4

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1, 4

**OTHER AUTHORITES**

Press Release, Democracy Forward Foundation, *Student Debt Reform Org Presses Lawsuit to Protect Borrowers from CFPB's Refusal to Supervise Student Loan Companies* (June 12, 2020),
https://democracyforward.org/press/student-debt-reform-org-presses-lawsuit-to-protect-borrowers-from-cfpb-refusal-to-supervise/ ............................................ 1, 2

# INTRODUCTION

This entire case is built upon sand. Plaintiff Student Debt Crisis ("SDC") posits the existence of a secret regulation that rescinds the Consumer Financial Protection Bureau's ("Bureau" or "CFPB") authority to conduct supervisory examinations of federal student loan servicers, and its claims rely on the existence of this imaginary rule. But SDC's allegations, which rely principally on off-hand, out-of-context remarks as evidence of the purported "rule," are insufficient to survive even the liberal pleading standards of federal courts. Plaintiff's claims are further undermined by Plaintiff's concession in its Opposition that the Bureau's Director recently publicly affirmed the Bureau's authority to supervise federal student loan servicers. As a result, Plaintiffs' Opposition makes even clearer that SDC's First Amended Complaint ("FAC") does not plausibly allege: 1) final agency action adopting such a rule, 2) agency withholding of a non-discretionary act, 3) standing, or 4) any claim for relief against the Bureau. The FAC must be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.

# ARGUMENT

## I. The FAC Fails to Plausibly Allege a Final Agency Action Necessary for Jurisdiction and Fails to Plausibly State Any Claim

The issue in this action is whether Plaintiff has plausibly pled that the Bureau has adopted a new "rule" silently rescinding its regulation establishing supervisory examination authority with respect to federal student loan servicers. In a press release issued about this lawsuit, Student Debt Crisis through its counsel has now publicly acknowledged that the Bureau has done no such thing: "Because of our suit, the CFPB has reversed course in words, *acknowledging it does indeed have supervisory authority over large student loan servicers*." Press Release, Democracy Forward Foundation, *Student Debt Reform Org Presses Lawsuit to Protect Borrowers from CFPB's Refusal to Supervise Student Loan Companies* (June 12,

2020) (emphasis added).[1]  As acknowledged by the Opposition, the Bureau's Director has repeatedly reiterated in testimony under oath to Congress that the Bureau possesses the authority to examine larger participants in the student loan servicing market, specifically including servicers of federal student loans.  *See* Opp. at 11 and Martinez Declaration; *see also* Barrett Declaration at ¶¶ 2-3.  SDC's concession fatally undermines the allegations in its FAC necessary to establish the existence of the purported rule and to plead all its causes of action.

SDC nevertheless continues to rely on the September 2018 television interview of Mick Mulvaney, the Bureau's then-Acting Director, who responded briefly to one question about the Bureau's Private Education Loan Ombudsman ("PELO") concerning the PELO's role with respect to private education loan servicing.  Opp. at 4.  SDC argues that this comment, which was wholly unrelated to supervisory examinations, plausibly alleges a secret amendment to the rule establishing Bureau supervisory authority with respect to federal student loan servicers.  But SDC's Opposition does not attempt to explain how a response to a question about the former Private Education Loan Ombudsman's area of responsibility could be interpreted as a final agency action concerning the Bureau's unrelated supervisory authority over larger participant student loan servicers.  See Memorandum in Support of Motion ("Memo") at 10-11.

In an attempt to salvage its claims, SDC now tries to distinguish the CFPB's "words" from its "actions," claiming that even if the CFPB has not *actually* renounced its authority to supervise federal student loan servicers (silently or otherwise), the "rule" can nonetheless be inferred from the CFPB's alleged failure to conduct a supervisory exam of a federal student loan servicer for some period of time, in conjunction with separate actions by the Department of Education.  Opp. at 10-12.  In so doing, SDC seeks to impermissibly amend its complaint by adding

---

[1] Available at https://democracyforward.org/press/student-debt-reform-org-presses-lawsuit-to-protect-borrowers-from-cfpb-refusal-to-supervise/.

2

*Reply in Support of Defendants' Motion for Dismissal*                               Case No. 2:19-cv-10048-JAK

allegations that do not appear in the FAC, such as a claim that the Bureau's "pattern of behavior" is *evidence of the existence* of a "New Supervision Rule," Opp. at 10, rather than that such behavior is, as pled in the FAC, a "result of the New Supervision Rule." FAC ¶ 79. *See, e.g., Dietz Int'l Pub. Adjusters of Cal., Inc. v. Evanston Ins. Co.*, No. CV 09-06662 MMM (Ex), 2009 WL 10673937 *at n.27 (C.D. Cal. Dec. 14, 2009) ("A plaintiff cannot cure deficiencies in a complaint through allegations provided in its opposition to a motion to dismiss").

Even assuming it were true that the Bureau did not conduct an examination of a federal student loan servicer for some period of time, the problem with seeking to infer the existence of the "rule" from the alleged lack of supervisory activity is that it fails to take into account the Bureau's wide discretion to operate its risk-based supervisory program in light of a large number of risk-based factors and resource demands that are authorized bases for these decisions. *See* Memo at 3-6. The FAC pleads that the relevant Bureau authority applies to four large federal student loan servicers. ¶ 29. As explained in the Memo, the Bureau has supervisory authority over thousands of entities, and yet undertook just 125 on-site examinations in fiscal year 2019. Memo at 4 n.1 and 4 n.2. Clearly, a great many institutions subject to the Bureau's supervisory authority are not examined in a particular year, or for several years, or indeed may have *never* been examined in the Bureau's history. The Bureau is entitled to take into account the existence of other oversight when allocating its scarce resources, and federal student loan servicers are separately subject to oversight by the Department of Education and the states. Memo at 6. Furthermore, Bureau oversight includes enforcement actions as well as exams. With respect to federal student loan servicing, the Bureau is actively litigating a civil action to obtain relief for consumers from one of these four entities. *Id.*

SDC principally relies on *Hispanic Affairs Project v. Acosta*, 901 F.3d 378 (D.C. Cir. 2018) to argue that its limited allegations are sufficient to plausibly allege a rule change or illegal practice subject to challenge under the APA and survive a motion to dismiss. *Hispanic Affairs* concerns a very different regulatory context and

issue, however—whether an agency's practice of routinely granting employment visas for three years, and serially re-issuing them, violated a regulation restricting such visas to "temporary employment" of under one year. *Id*. at 385. *Hispanic Affairs* is distinguishable because the agency's alleged practice in that case (serially issuing multi-year visas) was not only extensively well documented, but also was in direct contravention of the regulation (requiring that such visas be for "temporary employment" only). Here, the regulation at issue merely *authorizes*, but does not *require*, the Bureau to conduct exams of certain entities. The Bureau has wide discretion, codified in statute, to make judgments about which entities to supervise and when. Thus, SDC can identify no similar conflict between the Bureau's alleged "practice" of not supervising certain entities for some period of time, and the regulation at issue.

As framed in the Opposition brief, each of SDC's five causes of action is premised on the existence of the purported rule.[2] For these reasons, each cause of action is outside the subject matter jurisdiction of this Court and fails to state a claim for relief.[3] Therefore each cause of action must be dismissed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**II. This Court Must Dismiss This Action Now for Lack of Jurisdiction**

SDC asserts that it need not now plausibly allege final agency action to establish the court's jurisdiction, both because the existence of final agency action is not necessarily a jurisdictional issue in this circuit and because this issue is "intertwined with the merits." Opp. at 6-7. SDC ignores the governing precedents

---

[2] The first four counts of the FAC explicitly relate to the purported Rule. *See* FAC ¶¶ 82-107. SDC's Opposition concedes that the fifth count is also premised on the existence of the purported rule. Opp. at 2 ("Count V … alleges that the CFPB's decision to cease supervisory examinations under the New Supervision Rule … .").

[3] SDC contends that it is entitled to jurisdictional discovery based on the unexplained assertion that the facts are contested or more facts are needed. The facts here are not actually in dispute and no available additional facts relating to jurisdiction are or could be at issue. Dismissal rather than discovery is the appropriate course. *See, e.g., Perez v. Indian Harbor Ins. Co.*, No. 4:19-cv-07288-YGR, 2020 WL 2322996, at 4 (N.D. Cal. May 11, 2020) ("An order of jurisdictional discovery is not to be had for the taking").

on both issues. "In this circuit, the final agency action requirement has been treated as jurisdictional." *San Francisco Herring Ass'n v. Dep't. of Interior*, 946 F.3d 564, 571 (9th Cir. 2019) (citing *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1161 (9th Cir. 2018); *San Luis Food Producers v. United States*, 709 F.3d 798, 801 (9th Cir. 2013)).

SDC mistakenly relies on *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), for the proposition that the jurisdictional issue here is "intertwined" with a substantive issue "going to the merits" such that it cannot be decided on a motion to dismiss. But the Ninth Circuit in *Safe Air* held it was error to dismiss, rather than grant summary judgment, because one statute, the Resource Conservation and Recovery Act ("RCRA"), 'provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief' [such that] the question of jurisdiction and the merits of this action are intertwined." *Id*. at 1040 (citing *Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*, 711 F.2d 138, 139). Here, however, SDC's substantive claim is asserted under the APA, and "[t]he APA is not a jurisdictional statute." *San Carlos Apache Tribe v. U.S.*, 417 F.3d 1091, at 1093 n.2 (9th Cir. 2005) (citation omitted). *Safe Air* did not concern purported final agency action under the APA and does not govern this action.

### III. The FAC Fails to Plausibly Allege Standing

SDC does not plausibly allege an injury in fact to the organization sufficient for standing. The parties agree that organizational standing here requires the frustration of SDC's mission and the diversion of resources from another activity to combat this frustration under *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) and *Smith v. Pacific Properties & Development Corporation*, 358 F.3d 1097, 1105 (9th Cir. 2004). Here there is neither plausible "frustration" of SDC or actual "diversion of resources" from different identified SDC initiatives.

SDC's alleged mission is to provide assistance and education to borrowers. Its increased efforts in these areas may indicate that borrowers are frustrated, but does not plausibly indicate that *SDC itself* is frustrated in its efforts to do this work.

SDC principally makes a convoluted argument that somehow the Bureau's continued processing of individual consumer complaints, a process entirely separate from supervisory examinations, results in frustration. Opp. at 16.[4] In particular, SDC presumes, without any asserted or pled factual basis, that the Bureau's consumer complaint processing function, which is handled by a different Bureau division from its supervisory function, somehow became ineffective when former Acting Director Mulvaney was interviewed in September 2018.

This argument requires acceptance of an unsubstantiated (and not pled) attenuated causal chain whereby: 1) every single complaint immediately influences a decision to conduct a prompt examination, 2) which in turn results in immediate exam activity, 3) necessarily resulting in instantaneous examination findings with respect to each complainant, 4) that in turn results in immediate individual relief for each such consumer. The further leap is then made that a complaining borrower, having failed to receive such relief, turns to SDC for assistance, and the fact that the borrower has sought this assistance frustrates SDC's mission of providing assistance to borrowers. SDC does not and cannot plausibly plead the existence of such a process because, among many other reasons, numerous other intervening considerations prevent such a result. And here, once again, SDC impermissibly tries to "amend" the FAC by its Opposition. *See, e.g.*, *Dietz* *at n.27

SDC's claim that the purported rule has required the diversion of resources from other programs is similarly unavailing. SDC argues only that it will have to "reallocate" resources in the future to assist borrowers in different ways. Opp. at 18. This assertion is not connected to any specific diversion of identified resources, let

---

[4] SDC persistently misdescribes the relationship between the Bureau's consumer complaint program and confidential supervisory examinations. *See, e.g.* FAC ¶66 (SDC making an allegation clearly intended to represent to the reader that examiners rely extensively on consumer complaints to the Bureau, but the accompanying footnote refers to a publicly available CFPB examination procedure which makes clear that examiners of an entity are instead expected to review the complaints that the examined entity receives directly from consumers).

alone a diversion of resources from another initiative. *See East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 766 (9th Cir. 2018).

SDC neither plausibly pleads nor argues that it has meaningfully diverted specific resources from a different initiative to combat a plausible frustration of its organization's mission because of the purported rule. If the allegations in the FAC are sufficient to establish organizational standing, then every non-profit can always generally allege resource expenditures and thereby establish standing. SDC has not suffered an injury in fact and therefore lacks organizational standing.

Moreover, SDC fails to establish the causation and redressability required to establish its standing to pursue this action. SDC argues, without a citation to a paragraph of the FAC adequately alleging causation, that the purported rule "allows servicers to ignore consumer financial laws and caused a spike in servicer complaints." As already explained *supra* at 6, SDC again implies that the harm results from the CFPB consumer complaint-handling process, without sufficiently connecting that process to supervisory examinations and the purported rule, or alleging that how the Bureau handles complaints has in any way changed since the prior Administration. SDC makes one other completely unsupported argument— that it has somehow "been forced to step in to fill the gaps left by the CFPB," Opp. at 20— as if SDC can and does conduct supervisory examinations. SDC has not plausibly alleged, or even asserted, causation sufficient for standing.

To establish redressability, SDC contends that a public rulemaking process "could" lead the CFPB to abandon or modify the putative rule. Opp. at 20-21. But SDC fails to explain how any public rulemaking process could address any alleged injury.[5] To the extent Plaintiff is suggesting the relief it seeks is a public rulemaking process to formally assess whether to maintain the Larger Participant Rule's grant

---

[5] SDC here and elsewhere refers to the CFPB's purported failure to require actions by the Department of Education, as if this Court can order relief in this action from the Department of Education to redress the alleged frustration of SDC's mission and the alleged diversion of its resources resulting from the purported Bureau rule. Opp. at 21, *see also* Opp. at 13.

7

*Reply in Support of Defendants' Motion for Dismissal*                                    Case No. 2:19-cv-10048-JAK

of authority to the Bureau to supervise large servicers of federal student loans, this attenuated argument is not connected to Plaintiff's claims which, at this point, do not contest that the Bureau believes it actually has authority to supervise servicers of federal student loans. SDC presumably now focuses (contrary to the allegations in the FAC) on whether the Bureau is performing Plaintiff's preferred amount and type of supervisory activity.

SDC does not even attempt to plausibly connect harms the federal student loan servicer's conduct may impose on borrowers to the purported rule. Because SDC makes no effort to explain how a cognizable injury is likely to be redressed by a decision in its favor, the FAC fails to plausibly plead standing and must be dismissed.

### IV. The Bureau's Conduct of Supervisory Examinations is Non-Justiciable and Not Actionable Under Section 706(1)

The gravamen of SDC's FAC is that the Bureau is not conducting supervisory examinations of federal student servicers. Through Count V of the FAC, SDC seeks to require the Bureau to conduct such examinations. FAC ¶¶ 108-111 and Prayer for Relief #4 ("Order that the CFPB resume supervising … those servicing federally held student loans … ."). In its Opposition, SDC frames this cause of action as a challenge to "CFPB's decision to categorically abandon examinations of an entire class of loan servicers." Opp. at 21, see also *id*. at 23 (indicating that SDC is referring here to federal student loan servicers). But SDC is not entitled to any relief with respect to the operation of the Bureau's discretionary supervisory exam program.

The Opposition acknowledges, as it must, the Bureau's discretion with respect to conducting supervisory exams. Opp. at 4 ("[S]pecific supervisory examinations are at the CFPB's discretion…"). The Opposition attempts to evade this issue by singling out a plaintiff-defined subset of supervised entities and labeling the failure to examine those entities "categorical." *See* Opp. at 21. But as noted above, the Bureau conducts a limited number of exams every year of the thousands of entities

8

subject to its authority.  Any group in any year could be singled out by an enterprising plaintiff who could claim that the Bureau failed to examine this subset "categorically" or "abandoned [it] wholesale." Opp. at 23.  SDC cannot bypass the Bureau's wide discretion to choose the entities it examines (and the schedule and frequency for those exams) through its own self-serving definition of a "categorical" failure.

To the extent Count V seeks any further or particular relief with respect to Bureau supervisory examinations of federal student loan servicers, its claim is nonjusticiable under *Heckler v. Chaney*, 470 U.S. 821, 835 (1985) (holding that action under a statute authorizing "examinations and investigations …" is not justiciable).  *Heckler* applies with particular force here.  The Bureau is specifically directed and empowered by statute to exercise discretion in the implementation of its risk-based examination program in light of the large number of nondepository entities subject to its supervisory examination authority.  12 U.S.C. § 5514(b), see Memo at 4-5.  To the extent SDC is asking this Court to require any specific examination, require an examination on any particular timetable, enter any order with respect to how an examination is conducted, or otherwise oversee the conduct of the Bureau's supervisory examinations, SDC's cause of action is non-justiciable.

Even if this Court could review the putative lack of supervision, it cannot grant the relief SDC seeks.  A court can compel agency action pursuant to Section 706(1) of the APA only if there has been a specific command requiring the nondiscretionary discrete action that the plaintiff seeks.  Memo at 23-25.  SDC does not cite a single authority supporting a claim for categorical or other relief under Section 706(1).  It meekly invokes the Dodd-Frank Act, which provides that the Bureau "shall conduct examinations and require reports on a periodic basis" of larger market participants, 12 U.S.C. § 5514(a)(1)(B), (b)(1), Opp. at 24.  But of course SDC does not contend that the Bureau has ceased conducting examinations of larger market participants altogether, and the exact number and types of exams it *does* conduct is specifically

given over to agency discretion[6] by law, as SDC admits. Opp. at 4. There is therefore no basis for this Court to provide relief under Section 706(1).

For these additional reasons, Count V of the FAC also is not within the subject matter jurisdiction of this Court and fails to state a claim.

## CONCLUSION

For the foregoing reasons and those set out in the Defendants' memorandum in support of this motion, the Court should grant the Defendants' motion for dismissal.

DATED: July 1, 2020                         Respectfully submitted,

*/s/* Bernard J. Barrett, Jr.
Bernard J. Barrett Jr. (CA Bar No. 165869)
Consumer Financial Protection Bureau
1700 G Street, N.W.
Washington, D.C. 20552
Telephone: (202) 435-9396
Facsimile: (202) 435-7024
Bernard.barrett@cfpb.gov

*Counsel for Defendants*

---

[6] SDC's assertion that the Bureau has "categorically" failed to conduct federal student loan servicer exams is not actionable under Section 706(1) of the APA. *San Luis Unit Food Producers*, 709 F.3d at 803 ("Statutory goals that are 'mandatory as to the object to be achieved' but leave the agency with 'discretion in deciding how to achieve' those goals are insufficient to support a 'failure to act' claim because such discretionary actions are not 'demanded by law.' [*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004)] at 66.").